THE CHICAGO CITY RAILWAY COMPANY

*v.*

JOHANNA M. MATTHIESON.

*Opinion filed October 24, 1904—Rehearing denied December 9, 1904.*

1. TRIAL—*an impeaching statement should not be read during cross-examination.* The proper time for reading a paper containing an inconsistent statement of a witness for the defendant is when the plaintiff presents his evidence in rebuttal, and not on cross-examination of the witness; but pursuing the latter course is not ground for reversal.

2. EVIDENCE—*when opposite party may prove admission.* Where a witness neither directly admits nor denies making a statement inconsistent with his testimony but gives an indirect answer not amounting to an admission, the opposite party may prove that the statement was made.

3. SAME—*declarations corroborating testimony not admissible after witness is discredited.* Proof of declarations of a witness out of court in corroboration of his testimony at the trial is not, as a general rule, admissible after he has been impeached or discredited, the exception being where the contradictory statement raises an inference that the testimony is a recent fabrication or arises from a recent motive.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

WILLIAM J. HYNES, and EDWARD C. HIGGINS, (MASON B. STARRING, of counsel,) for appellant.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William C. Matthieson, a painter, who had been working at his trade during the day, in going home in the evening drove north with his son, nineteen years old, in appellant's car tracks on Halsted street in a light wagon, in which there were pails and utensils used in painting and calcimining. At Thirty-third street, as he was turning east, the left hind wheel of the wagon was broken, he was thrown out and fatally injured and the horse ran away. This suit was brought by appellee, as administratrix of his estate, in the superior court of Cook county, charging the appellant with causing his death by negligence in running one of its cars against the wagon. A plea of the general issue was filed by the defendant and there was a trial by jury. There were a number of witnesses on each side, apparently disinterested, who testified directly contrary to each other. The evidence for the plaintiff tended to show that the horse was going slowly in the car tracks; that a north-bound car came up rapidly behind and slowed down somewhat while the bell was violently rung; that the horse became somewhat excited and increased his speed; that when in the act of turning out of the car tracks into Thirty-third street the speed of the car was increased, and it struck the tail-board and left hind wheel of the wagon, breaking them and tipping the wagon over, when the horse ran away. The evidence for the defendant was, that the wagon was not struck by the car at all;

that when in the car tracks on Halsted street the horse was excited, acting wild and going at a rapid rate; that in turning east out of the car tracks the wheel was wrenched and broken; that on account of the speed of the horse the wagon was swung around and tipped in such a way as to throw Matthieson out after he had gone some distance in Thirty-third street, and that the fright of the horse was increased by the falling out of the pails and utensils in the wagon when the wheel broke down. The trial resulted in a verdict and judgment for $5000, and the judgment was affirmed by the Appellate Court for the First District.

The first error alleged consists in the admission of evidence on behalf of the plaintiff. The most material question of fact in controversy was whether the car struck the wagon, as claimed by the plaintiff. On that question Frederick Kern testified, for the defendant, that he was sitting in front of his store, on the west side of Halsted street, at Thirty-third street, reading a paper; that he heard the sound of a car bell ringing pretty loud and looked up; that he saw a little wagon ahead of the car about twenty-five or thirty feet; that the horse was on a lively trot, and as Matthieson turned short and went around the corner the wagon upset or tipped over with the whitewash and other things that were in the wagon. On his cross-examination he was shown a paper and said that the name subscribed to it was his signature. He read the paper and again stated that he signed it. The paper was then offered in evidence, and the court held that a part of it might be read to the jury unless counsel for defendant wished to examine witness further about it. There was no further examination at that time and a part of the paper was read, in which it was stated that when the witness first saw the wagon the car was three or four feet from it; that it might have been five or six feet away; that the car was going slow and did not stop at any time before the accident, and that he could not see light between the car and wagon when the man fell. On re-direct examination by

counsel for defendant the witness said that the paper, except the signature, was not in his handwriting; that he never read it and had no recollection of seeing it, and that what he stated at the time the paper was written was not in any way different from what he stated in his testimony. Counsel for defendant then moved to exclude the paper, but there was no ruling on the motion and no exception, so that on the motion to exclude the paper there is nothing to review. The court offered counsel an opportunity to examine the witness further concerning the paper before it was read, and if the subsequent testimony of the witness had then been introduced a different question would be presented. The witness was a German who did not read English readily, and his final testimony was to the effect that he did not state what was written in the paper, but when the paper was admitted the witness had read it and merely stated that he had signed it. His admission was *prima facie* evidence that the statement was his own, and the court did not err in admitting it.

It is further urged that the court erred in permitting the inconsistent statement to be read during the cross-examination of the witness. The proper time would have been when plaintiff presented his side of the case in rebuttal. (*Chicago City Railway Co. v. McLaughlin,* 146 Ill. 353.) It is not a proper method to mingle testimony for the defendant with that for the plaintiff unless there is something to warrant a suspension of the ordinary rule. In the orderly trial of a cause one party introduces his evidence and then the other party is heard, and the introduction of impeaching evidence during the examination of a witness is not in accordance with that rule, but the order in which evidence is introduced is generally regarded as in the discretion of the court. In that view the admission of the paper at the time it was read was not error for which the judgment could be reversed.

The witness Kern was also asked, on his cross-examination, if he did not make a statement to another person, and the statement was inconsistent with his testimony at the trial

as to the distance between the car and the wagon. He said that it might have been that he did; that the statement that he made to that person was probably a year after the coroner's inquest, when his memory was not as good as at the inquest. The person named was afterwards called by the plaintiff to prove that the statement was made by Kern, and it is insisted that this was error. The rule is, that if the witness neither directly admits nor denies the statement, but gives any indirect answer not amounting to an admission, it is competent for the opposite party to prove that it was made. (*Ray* v. *Bell,* 24 Ill. 444.) In this case the witness did not directly admit that he made the statement, and it was not error to admit the evidence that he did make it.

After the paper signed by the witness Kern had been read to the jury, counsel for defendant, on re-direct examination, offered in evidence the original deposition of the witness taken at the coroner's inquest, three days after the death of Matthieson, in which he testified substantially as on the trial. The deposition was excluded and the defendant excepted. It is insisted by counsel that after the court had admitted the contradictory statement for the purpose of casting discredit upon the testimony, the defendant had a right to show by the deposition that the version of the occurrence given at the inquest, prior to the alleged contradictory statement, was consistent with and in corroboration of his testimony given on the trial. The decisions as to what circumstances will justify the admission of evidence of prior statements consistent with the testimony of a witness are not harmonious, although the difference seems to be more frequently in the language of the courts than the application of the rule. It is not necessary, however, to review the decisions, for the reason that the rule in such cases has been long established in this court. The purpose of introducing evidence of statements out of court inconsistent with or contradictory to evidence given upon a trial is to discredit the witness, and such inconsistent or contradictory statements

are never, in any case, evidence of the fact. If two statements are contradictory they cannot both be true, and the fact that they were made tends to show that the witness is unreliable, on account of an uncertain memory or want of truthfulness. It seems clear that such evidence could not be overcome or explained by proving that the witness at some other time made a statement consistent with his testimony. The witness is discredited by the fact that he has contradicted himself and related the transaction in different ways, and to admit evidence that at some time he had made a statement consistent with his testimony would only show that at different times he had been making different statements about the same matter. The only way to meet evidence of a contradictory statement is to prove that the witness did not make it. Evidence of a previous statement consistent with the testimony of a witness is no more competent as evidence of the fact than the contradictory statement. For these reasons proof of the declarations of a witness out of court in corroboration of testimony given by him on the trial of the case is, as a general rule, inadmissible, even after he has been impeached or discredited. (*Stolp* v. *Blair,* 68 Ill. 541.) To this general rule there are exceptions, which were first stated in *Gates* v. *People,* 14 Ill. 433. In that case Devol was a witness on the trial of Gates for the murder of Liley. Devol was under indictment as an accessory after the fact to the same murder. He testified to an interview with Gates when Gates was in jail on another charge and before he had been arrested for the murder. The defendant called witnesses to show that the character of Devol for truth and veracity was bad, and also proved that the indictment was then pending against him as an accessory after the fact to the murder of Liley. The court then admitted evidence that Devol, on coming out of the jail, gave the same account of the interview as he testified to on the trial. The general reputation for truth and veracity of Devol was attacked, and the natural inference from the fact that an indictment was

pending against him would be that he would try to relieve himself from suspicion by showing that Gates and his brother were the guilty parties, and it was said that evidence of his statement to the sheriff before he was accused and when no such motive existed, and when he could not have foreseen the result of his interview, was properly admitted to sustain his credibility. It was held that former statements of a witness may be given in evidence in particular cases, "as where he is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist or when motives of interest would have induced· him to make a different statement of facts. So in contradiction of evidence tending to show that the witness' account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar account before its effect and operation could be foreseen." That was a case of showing a consistent statement when the motive for a false statement did not exist. In *Waller* v. *People,* 209 Ill. 284, a witness testified that in the affray when the homicide was committed defendant kicked him, and there was testimony of witnesses that in giving an account of the affair the witness omitted to state that the defendant kicked him. The inference raised by this testimony was, that the material addition to his former statements was a recent fabrication of the witness after the statements testified to by the other witnesses. It was therefore held competent for the People, in rebuttal, to support the credibility of the witness by showing that the kicking was not a new addition to his account, but that in relating the transaction to other witnesses about the time of it he said the defendant kicked him. Of course, it is not necessary that the record should show a charge or allegation of an improper motive influencing the witness to give testimony different from the contradictory statement, or a charge, in terms, of a recent fabrication. If the inference, from the testimony, of a con-

tradictory statement would be to stamp the testimony on the trial as arising from some motive or as a recent invention, evidence of similar statements before the motive had any existence or showing that the testimony is not a recent fabrication is admissible, but not otherwise. There was no such ground for admitting the deposition in this case, and the court did not err in excluding it.

It is next contended that the court erred in striking out the testimony of a witness that the horse of Matthieson, in coming up Halsted street, was acting wild. The witness was describing the manner of the horse, and said that he ran fast and was wild. The statement was not a mere conclusion and ought not to have been stricken out. (*Overtoom* v. *Chicago and Eastern Illinois Railroad Co.* 181 Ill. 323.) The witness immediately after repeated that the horse was going fast and was fresh and wild, and explained just what she meant, so that the defendant had all the benefit that it would have had if the ruling had been different. The striking out of the testimony is not ground for reversal.

It is argued that the court erred in refusing to give to the jury instructions asked by the defendant to the effect that if Matthieson could by the exercise of ordinary care have escaped the injury they should find for the defendant, and that they should not be influenced by appeals for sympathy, and should try the case the same as though the defendant was a living person and not a corporation. These instructions were correct, but the points were fully covered by other instructions stating the same principles.

Finally, it is urged that the court erred in permitting the plaintiff, after resting her case, to call another witness. That was within the discretion of the court, which we think was not abused.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*