Patrick McCarthy, Appellee, *vs.* The Spring Valley Coal Company, Appellant.

*Opinion filed February 20, 1908.*

1. Mines—*a mule driver may rely upon inspection by those charged with that duty.* A mule driver in a mine is not guilty of contributory negligence in relying upon the performance of the duty of inspection required of those charged with that duty, and is not bound to examine for defects in the roof of entries not marked by the inspector as being in a dangerous condition.

2. Same—*when evidence of condition prior to injury is admissible though such condition had changed.* In an action by a mule driver injured by a fall of rock from the roof of an entry, evidence as to the condition of the roof several days prior to the injury is admissible, notwithstanding there were two falls of rock between that time and the time the injury occurred, as such evidence tends to show that a dangerous condition had existed for several days and that defendant knew or was charged with knowledge thereof.

3. Same—*when objection to question asked of mining expert is properly sustained.* An objection to a question asked of defendant's chief mining engineer, testifying as an expert, as to whether the fact that there are cracks in the roof of an entry necessarily indicates a dangerous condition of the roof is properly sustained, as not embodying other considerations shown by the evidence, including the witness' own testimony which would tend to affect the opinion of the witness.

4. Same—*withdrawal of evidence offered under count which is dismissed is not prejudicial.* A miner suing his employer for per-

sonal injury has a right to include in his declaration a count alleging a violation of the statute, and the fact that all the evidence introduced under such count is excluded from the jury after the plaintiff dismisses the count for failure to prove the necessary facts is not harmful to the defendant, as leaving a prejudicial impression on the minds of the jury.

5. TRIAL—*it is improper for counsel to allude to matters not receivable in evidence.* In an action for personal injuries it is improper for counsel for the plaintiff to speak of the plaintiff as a man with a wife and large family of children, or to allude to the defendant's counsel as the attorney for a casualty insurance company, thereby insinuating that the defendant was protected by such company and would not have to pay the judgment.

6. APPEALS AND ERRORS—*when error is not cured by remittitur.* Error resulting from improper conduct by the plaintiff's attorney in working upon the sympathy of the jury by referring to the plaintiff's wife and children cannot be cured by a *remittitur* of a portion of the verdict and judgment.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding.

This is an action on the case in the circuit court of Bureau county to recover damages for personal injury sustained in the appellant's coal mine. The negligence charged in the first and second counts of the declaration is, that appellant permitted the entry where the injury occurred to be and remain in an unsafe and dangerous condition and negligently permitted the roof thereof to become cracked and broken and in danger of falling, by reason of which, while appellee was in the entry in the discharge of his duty and in the exercise of ordinary care for his own safety, a mass of rock, stone and dirt comprising part of the roof fell upon and injured him. The third count charged appellant with negligently failing to prop, timber or support the roof. A trial resulted in a verdict and judgment against appellant for $10,000, which the Appellate Court, after requiring a *remittitur* of $2000, has affirmed. To review the judgment of affirmance this appeal is prosecuted.

McDougall, Chapman & Bayne, for appellant.

Duncan, Doyle & O'Conor, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

It is insisted that there is no evidence fairly tending to prove the negligence charged in the declaration. Appellee was employed by appellant as a driver and worked in the mine at night. About three o'clock in the afternoon of August 14, 1906, he entered the mine and was informed by the night boss that he would have men at the face of the coal in a certain entry and in a gob-room. It then became appellee's duty to go to the face of the coal in that entry and haul out to the gob-room such cars loaded with rock and earth as the men might have ready for him. He made three trips before supper. After supper, about eight o'clock, as he was going through this entry to reach the face of the coal, a mass of rock and earth fell upon him from the roof, the amount being variously estimated at from eighteen hundred pounds to four tons. His right arm was crushed between the rock and the rail, so that it had to be amputated four or five inches above the wrist, and he was injured about the hips and back and across the kidneys, but these latter injuries are not shown to be of a permanent nature. The evidence tends to show that there had been a serious fall of rock from the roof of this entry, at or near the place of the accident, during the previous day, and another at the place of the accident two or three days before, and on the day of the accident the roof was badly cracked and broken and had openings in it three or four inches wide. This condition of the roof was known to the employees of the appellant whose duty it was to look after the roof and mark dangerous places. The mine examiner, after the last fall of rock on the night before the accident, examined the place and put no danger signal there, notwithstanding the fact that there had been a fall of rock prior to his exami-

nation. While there was also evidence tending to show that the roof at the point in question was safe just prior to the accident and did not need support, and that appellant did not know of its dangerous condition and had performed all of the duties required of it by law for the safety of appellee, yet the evidence on these points was in conflict and presented a question of fact for the consideration of the jury. The court therefore committed no error in refusing to instruct the jury to return a verdict for appellant.

It is urged that if the dangerous condition of the roof was so apparent, appellee, who was an experienced driver, familiar with the manner in which the mine was operated and the dangers incident thereto, was guilty of contributory· negligence in repeatedly passing under the roof without examining it to see if it was safe. The duties of appellee required him to drive a mule and car along the entry. He had never worked in this entry before and had no notice of the various falls of rock. His only light was a lamp on the front of his cap, which it was necessary to keep turned upon the path along which he was driving. As he passed along the entry he examined the roof for chalk marks, which indicated loose rock or dangerous places, but did not find any. In the discharge of his duties it was impossible for him to make a minute examination of the roof for dangerous conditions. He was not required to do so, but had the right to rely upon the inspection which appellant's other servants employed for that purpose were supposed to have made. He was not guilty of contributory negligence in relying upon such inspection. *Himrod Coal Co.* v. *Clark,* 197 Ill. 514.

It is insisted that the fall of rock was the result of a squeeze, which could not be foreseen or avoided; that appellee was aware of the probability of injury from a squeeze, and therefore assumed the risk and cannot recover for his injuries. There is evidence to the effect that on the day of the accident there was a squeeze in the mine and that

some of the men working at the face quit work on account of it, but the evidence is indefinite as to the extent of the squeeze and its effect in various parts of the mine. The jury were fully instructed as to the law on the assumption of risk, and it was a question of fact fairly presented as to whether the accident was caused by a squeeze or by the negligence of the appellant in suffering the roof to be and remain in a dangerous condition.

The court admitted evidence to show the condition of the roof at the place of the accident for several days prior thereto. It is insisted that this was error, for the reason that there had been a fall of rock the night before and the condition of the entry had been thereby changed. While, on account of the fall of rock on the night prior to the accident, the condition of the entry was not precisely the same as it was several days prior thereto, yet the evidence was properly admitted for the purpose of showing that a dangerous condition had existed for several days, and that the appellant either had, or by the exercise of reasonable care might have had, notice of it. If rock and earth were falling from the roof at intervals it certainly tended to prove an unsafe condition, though the condition of the roof was somewhat changed with each fall.

The witness Leo Gluck, an expert, was asked the following question: "From the fact that there are cracks in the roof, does that necessarily indicate a dangerous condition of the roof?" An objection to the question was sustained and this ruling is assigned as error. Mr. Gluck was the chief mining engineer of the defendant, and he testified at length in regard to the method of mining the coal in appellant's mine, the cause, nature and extent of squeezes, and their effect in breaking up the strata and producing breaks in the roof. Before the question objected to was asked, he had testified that in determining the dangerous condition of the roof of an entry in a long-walled mine, the appearance of cracks in the roof, when they are enlarging, shows the

movement, and observation shows the reverse movement which closes them up again, and what to-day may seem unstable may become stable and solid again. The result of the excessive force which makes the break can only be observed after its result. It is the general appearance of the break you must go by. In so testifying, he had, in effect, given his views on the subject matter of the question objected to. He had no personal knowledge of the actual condition of the roof at the time of the accident or for some time before or after. The cracks in the roof were not the only elements of danger, and a question intended to elicit the opinion of an expert as to the condition of the roof, whether dangerous or otherwise, should have fairly included the facts shown by the evidence tending to affect such opinion.

An objection was sustained to the testimony of Mr. Radshaw that he examined the roof two days before appellee was hurt and found it safe. This objection is, however, of no importance, since the court afterward permitted him to be recalled and examined on that subject, and this was done.

At the close of all the evidence appellee dismissed his suit as to the fourth count of his declaration, which charged a failure to have examinations made by a mine examiner, as required by statute, and the mine examiner's book and report, and all evidence relating to this count having reference to the mine examiner and his duties and report, was excluded from the jury. It is claimed that the impression made upon the minds of the jury by the evidence tending to show a violation of the statute and a failure to place danger signals at the place of the accident could not be eliminated by the exclusion of the evidence. The appellant did not object to the ruling of the court and did not ask for any other ruling in that connection. The appellee had a right to include in his declaration a count for a failure to comply with the statute, and to prove it, if he could. If the evidence did not sustain the count he then had a right

to dismiss it. The defendant could not be injured by the plaintiff's withdrawal of part of his claim which he could not prove.

Complaint is made of the conduct of counsel for the appellee in the course of the trial. The counsel who made the opening statement to the jury began: "In this case Patrick McCarthy, thirty-three years of age, with a wife and five children," when he was interrupted with an objection, which the court sustained. In cross-examining one of appellant's witnesses in regard to the taking of a written statement of a witness for the appellee at the office of appellant, appellee's counsel asked if Mr. Bayne, the attorney of the Ætna Insurance Company, was present. On objection the question was withdrawn, counsel saying that he meant Mr. Bayne, the attorney for the Spring Valley Coal Company. Several objections were also made in the course of the argument of appellee's counsel to the jury.

The statement to the jury that the appellee had a wife and five children was manifestly improper. Its only object could have been to enhance the damages by getting before the jury, in this improper and unprofessional manner, facts calculated to arouse their sympathy, which counsel knew could not in any legitimate way be brought to their attention. To admit evidence of such facts is error. (*Jones & Adams Co. v. George*, 227 Ill. 64.) The fact once lodged in the minds of the jury could not be erased by an instruction, and appellee by this statement secured the benefit of the fact to the same extent as if he had introduced evidence to prove it.

The question in which Mr. Bayne was referred to as the attorney of the Ætna Insurance Company was also justly subject to criticism. The question asked was as follows: "At the time that this statement was taken from Luke Frain at the office of the Spring Valley Coal Company, was Mr. Bayne, the attorney for the Ætna Insurance Company, there?" It is as strange as it is unfortunate that this ques-

tion should have been asked through mere inadvertence, as stated in appellee's brief. It is strange that with the name of appellant in counsel's mouth, the name of Mr. Bayne, who was then present assisting in the trial as attorney for the appellant, should have associated itself in counsel's mind and speech with the name of the Ætna Insurance Company as attorney instead of with the name of the appellant. The question and the circumstances were well adapted to intimate strongly to the jury that the appellant was insured against liability for accidents of this character, and that the party which would have to respond for any judgment which might be rendered was the Ætna Insurance Company. Evidence of this character was not competent. The intimation may not have been true, and it is unfortunate that the suggestion should have been inadvertently made. The only effect it could have would be to convey an improper impression to the jury.

As to the objections to the argument of the appellee's counsel, from the brief extracts appearing in the bill of exceptions and the uncertainty as to a part of what was said on account of the manner of setting it out in the bill of exceptions, we are unable to say that the appellant was injuriously affected by it.

The Appellate Court required a *remittitur* of $2000 from the judgment as the alternative of a reversal on account of the effect on the minds of the jury of the improper statement in regard to appellee's wife and children. Such *remittitur* does not, however, cure the error. (*Jones & Adams Co.* v. *George, supra.*) It is impossible to tell the effect, on the verdict, of the impressions wrongfully conveyed to the jury's mind by the improper conduct of counsel.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*