Fred Ramey *et al.* Appellees, *vs.* The Baltimore and
Ohio Southwestern Railroad Company, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 8, 1908.*

1. Waters—*duty of railroad company not to obstruct stream is
a continuing one.* The duty of a railroad company to so construct
and maintain its road across a stream as not to injure adjacent land
by throwing water back upon it is a continuing one, and each over-
flow resulting from a neglect of that duty creates a new cause of ac-
tion for any injury thereby occasioned to the crops and land.

2. Same—*party may assume that railroad company's neglect will
not continue.* One whose lands have been injured by overflow of
water caused by an imperfect structure built by a railroad company
or by the wrongful or negligent acts of the company is not bound
to assume that the structure will be permanent or that the wrongful
or negligent acts will be continued, but he has a right to regard
them as of a transient character.

3. Same—*effect where lessee renews lease knowing of injury to
crops caused by railroad company's neglect of. duty.* A lessee of
land whose crops have been injured by overflow, caused by the
wrongful act of a railroad company in obstructing a stream, has a
right to renew the lease upon the presumption that the nuisance
will not be continued and that the company will perform its contin-
uing duty not to obstruct the stream, and he is not precluded from
recovering damages for subsequent injury to the crops caused by a
continuation of the obstruction.

4. Same—*what does not justify railroad in changing course of
stream.* The fact that a creek flowing under a railroad trestle has
become filled up without fault of the company does not give the
company the right to dig a ditch and throw the water upon farm
land against the natural course of drainage.

5. Evidence—*when release of damages from overflow is not ad-
missible.* In an action against a railroad company for damages to
land caused by overflow alleged to be due to the defendant's wrong-
ful act in obstructing a stream and changing its course, a release
executed by the plaintiff to another railroad company, whose tracks
paralleled the defendant's, for all damages sustained by the plain-
tiff on account of his land being overflowed up to a date previous
to the time the damage sued for began to occur, is not admissible.

6. Instructions—*there is no difference between repeating the
facts alleged and referring jury to declaration.* There is no differ-
ence, in effect, between an instruction which repeats the facts al-
leged in the declaration and authorizes a recovery if the jury believe

such facts to have been proved, and one which refers the jury to the declaration for the facts by requiring the plaintiff to prove that the defendant has been guilty of the negligence charged in the declaration or some count thereof.

7. SAME—*what modification does not change meaning.* An instruction in an action for damages from overflow which directs the jury to find for the defendant railroad company if the ditch it had constructed did not "obstruct" the water's flow is not changed in meaning by striking out the word "obstruct" and inserting the clause, "in any manner cause an obstruction to."

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

KRAMER, KRAMER & CAMPBELL, (EDWARD BARTON, of counsel,) for appellant.

KOERNER & KOERNER, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On August 6, 1906, the appellees, who were lessees of a farm known as the Brooks farm, lying north of and near the railroad of appellant, in St. Clair county, brought this action of trespass on the case against appellant to recover damages by reason of overflow on the eastern part of said farm in the years 1905 and 1906, alleged to have been caused by negligent and wrongful acts of the appellant in changing the direction of a natural water-course. The declaration contained two counts, the first relating to the year 1905 and the second to the year 1906. The defendant pleaded the general issue and a trial resulted in a verdict in favor of plaintiffs for $1900, from which they remitted $400. Judgment was entered for $1500 and costs, and the Appellate Court for the Fourth District affirmed the judgment.

One of the assignments of error is that the court refused to direct a verdict of not guilty.

The Brooks farm is situated in the bottom land between the city of East St. Louis and the bluffs a few miles east of said city, and is bounded on the south by the Vandalia railroad and on the east by the Griswold farm. The railroad of the defendant lies south of the Vandalia railroad, and the roads run east from the city of East St. Louis, parallel with and near each other, to the vicinity of the southeast corner of the Brooks farm, where they diverge and continue east, from three hundred to six hundred yards apart, to Caseyville and the bluffs. Prior to the acts complained of the natural drainage from the eastern half of the Brooks farm was southward to the Vandalia right of way and from thence eastward about three hundred yards to a trestle under the Vandalia tracks on the Griswold farm. The water flowed under that trestle and southward about three hundred yards to and under a trestle of defendant eighty-two feet long, and from thence south to Spring lake. That drainage was adequate at all times, and with the exception of a great flood in the Mississippi river in 1903, when water was thrown upon the farm from the north, the land was practically free from water. About three hundred yards east of said trestle in defendant's road there is a highway running north and south through the Griswold farm, known as Black lane. There is a trestle under defendant's road, constructed in 1893, about six hundred and fifty yards east of Black lane, over the natural water-course of Caseyville creek or Little Canteen creek. That creek rises in the bluffs to the east and flows from Caseyville in a westerly direction between the Vandalia road and defendant's road, with a well defined channel from ten to fifteen feet wide at the top and nine or ten feet deep. That trestle is fifty-four feet long, and prior to 1902 the creek turned south in its natural channel under the trestle and continued southwest to Spring lake. In times of heavy rains the creek

overflowed its bank and water sometimes reached a ditch on the south side of the Vandalia road, called by the witnesses the Vandalia ditch. At the trestle built over Caseyville creek the two railroads are about six hundred yards apart, and when that trestle was built there was an open space of about eight feet under the track. Between 1893 and 1902 the rubbish, stumps, logs and sediment brought down by the creek filled up the ground between the two tracks several feet, mostly west of the trestle, and willows grew there, and in 1902 there was very little space under the trestle. There was a dike running north from the west end of the trestle as high as the railroad tracks, which prevented the waters of the creek from going further west, and the water spread out, some of it running through the space remaining under the trestle and sometimes over the track. In 1902 the defendant cut through the dike and dug a ditch along the north side of its track about one thousand yards west, to the trestle west of Black lane, through which the Brooks farm had previously been drained. By digging the ditch the natural course of the creek was changed and the water was carried west along the track. In 1903, at the time of the Mississippi river flood, the bank of the defendant slid, and it dumped a large quantity of rock on the north side of its embankment, east of the west trestle, so as to fill up the ditch at that place and drive the waters around the pile of rock. During the spring and summer of 1905 there were severe and continued rain storms, which were repeated to some extent in 1906. During these heavy rains the waters of the creek flowing west along the ditch diverged and were turned in a north-west direction through the trestle of the Vandalia road and north and west upon the eastern part of the Brooks farm, reversing the natural course of drainage and causing the damage complained of.

One ground of the motion to direct a verdict was, that the lands south of the defendant's railroad and trestle east of Black lane, where the natural water-course existed, had

become so filled up and raised that the water would not longer flow in its natural course to Spring lake; that this was without fault of the defendant; that it was not bound to go upon the land of others and cut a channel below its own road, and that it was useless to clean out its trestle for the reason that the water could not flow away from it. The argument rests upon some testimony for the defendant, but the evidence for the plaintiffs was to the contrary, that the land south of the defendant's road was lower, and if the defendant had not permitted its trestle to fill up or if the water had been permitted to go through the trestle it would have found its way to Spring lake. The evidence for the plaintiffs was to be taken as true for the purpose of the motion, and the court did not err in leaving the question of fact to the jury.

It is also contended that the plaintiffs could not recover, and the court ought to have directed a verdict for the reason that they leased the farm from year to year, and the renewals for the years 1905 and 1906 were made with full knowledge of the condition of the trestle, track and ditch. The duty of a railroad company to so construct and maintain its road across a stream as not to injure adjacent land by throwing water back upon it is a continuing one, and each overflow resulting from a neglect of that duty creates a new cause of action for any injury thereby occasioned to the crops and land. A party injured by an imperfect structure or a wrongful or negligent act is not bound to assume that the structure will be permanent or that the wrongful or negligent act will be continued, but he has a right to regard them as of a transient character. The damage which the plaintiffs suffered by reason of the wrongful acts of the defendant might or might not occur, and they had a right, in taking a lease of the land, to act upon the presumption that the nuisance would not be continued and the defendant would perform its continuing duty imposed by the law to not obstruct the passage of the water in its natural channel.

(*Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,*
75 Ill. 524; *Ohio and Mississippi Railway Co.* v. *Wachter,*
123 id. 440; *Chicago, Burlington and Quincy Railroad Co.*
v. *Schaffer,* 124 id. 112; *Ohio and Mississippi Railway Co.*
v. *Thillman,* 143 id. 127.) The court did not err in re-
fusing to direct a verdict.

The defendant offered in evidence a release executed
by the plaintiffs on July 8, 1904, to the receiver of the
Vandalia railroad, for all damages suffered by them as ten-
ants on account of the overflow and detention of water on
the farm, but the court refused to admit it in evidence. As
the release was only for damages which had accrued up to
July 8, 1904, which was before the damage sued for in
this case began to occur, the court did not err in the ruling.

Complaint is made of the instructions given at the re-
quest of the plaintiffs. Two instructions were given stat-
ing the facts which would justify a recovery, and they were
alike, except that one applied to the first count for the year
1905 and the other to the second count for the year 1906.
There were also two instructions as to the measure of dam-
ages,—one applicable to the first and the other to the sec-
ond count. The instructions as to the facts necessary to be
proved are objected to because they set out the facts favor-
able to the plaintiffs which the evidence tended to prove.
Counsel say that such instructions have been repeatedly
condemned. The instructions did not assume the existence
of any fact and are not subject to that criticism, but they
set out the facts alleged in the respective counts of the
declaration and directed a verdict for the plaintiffs if such
facts were proved. There is no distinction respecting the
enumeration of facts between them and the fifth instruction
given at the request of the defendant, which required the
plaintiffs to prove, by a preponderance of the evidence, that
the defendant had been guilty of the negligence alleged in
the declaration or some count thereof. By that instruction
the jury were referred to the declaration for the necessary

facts, and we see no difference between referring the jury to the declaration for the facts and repeating them in the instruction.

The instructions reciting the facts which would justify a recovery are also objected to, as permitting a recovery in the alternative without a finding that the plaintiffs were damaged or the drainage of the farm interfered with in one alternative. Certain facts necessary to be proved were stated, and the alternative facts referred to were the forcing and carrying of the water under the Vandalia trestle and into the natural water-course which served as a drain to the farm and upon the farm, or the obstruction and damming of the water-course which served as a drain for the farm and thereby preventing drainage. In either event the jury were required to believe, from a preponderance of the evidence, that the plaintiffs were damaged.

The court modified instruction No. 7 offered by the defendant, and it is insisted that the court erred in doing so. As offered, the instruction directed the jury to find the defendant not guilty if the ditch running west from the creek did not carry the water onto the land nor obstruct the water's flow from said land. The court struck out the word "obstruct" and inserted "nor in any manner cause an obstruction to." The change was immaterial and left the instruction with the same meaning as before. If the defendant did not obstruct the flow of the water it did not obstruct it in any manner, and if it did obstruct the flow of the water it necessarily obstructed it in some manner. As the instruction was not changed in meaning the defendant was not harmed.

The court did not err in refusing the third instruction offered by the defendant, which stated that if the creek had become filled up without fault of the defendant it had a right to dig the ditch and throw the water on the farm against the natural course of drainage.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*