John Hedge, Plaintiff-Appellee, v. Midwest Contractors Equipment Co., Inc., a Corporation, Defendant-Appellant, and Al Cohn, d/b/a Alco Steel Service, Defendant.

Gen. No. 49,262.

First District, Second Division.

August 14, 1964.

George E. Sweeney, and Ross, Kralovec, Sweeney & Marquard, all of Chicago (George E. Sweeney and Edward V. Scoby, of counsel), for appellant.

Lawrence P. Hickey and George S. Feiwell, both of Chicago (James P. Chapman, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment of $175,000, entered on a jury verdict in the Circuit Court of Cook County on March 13, 1963, against defendant, Midwest Contractors Equipment Company, and from an order entered on April 26, 1963, denying defendant's post-trial motions for judgment notwithstanding the verdict or for a new trial.

John Hedge was seriously injured on April 6, 1961, when the handle of an hand winch mounted on the side of an A-frame construction truck spun around and split his skull. At the time of the accident a two-thousand pound "drum shaft" was suspended from a cable over the "A" and attached to a power winch which was not being used. The hand winch was defective since a piece had been severed from the "dog lock," and a piece of lock or bolt had been inserted between the gears to keep them from spinning.

The truck was owned by Al Cohn, d/b/a Alco Steel Service and had been loaned to John Hedge's employer, State Wrecking Company, for the purpose of removing steel from the wrecked structures. The

truck was turned over to State Wrecking Company in November, 1960. It became defective while being used by State Wrecking Company. Approximately 250 to 300 tons of steel had been lifted by the truck with the makeshift gear lock arrangement prior to the accident. The jury returned a verdict for Alco Steel Service and it is not a party to this appeal.

John Hedge was a crane operator. During March, 1961, his crane broke down necessitating extensive refitting and removal of the drum shaft. The drum shaft was removed from the crane by State Wrecking Company employees and was delivered to the shop of Midwest Contractors Equipment Company for repairs. On April 5, 1961, the repaired drum shaft was picked up from Midwest by a dump truck driven by a State Wrecking Company employee. On April 6, 1961, Arlie Abbott, a Midwest mechanic, was dispatched by his foreman to State Wrecking Company to "install" the repaired drum shaft assembly in the crane. State Wrecking Company directed that John Hedge and Thomas Boles (Femmer) should help Arlie Abbott "install" the drum shaft. The drum shaft was still in the dump truck when Abbott arrived. The A-frame truck was used to lift the drum shaft from the dump truck and to transport it to the crane for positioning.

■■■ In support of its motion for judgment notwithstanding the verdict, defendant maintains that John Hedge was contributorily negligent as a matter of law. The manifest weight question has not been raised or argued on appeal. We are, therefore, precluded from considering the jury's findings that Midwest had a duty to John Hedge and that the accident occurred at a time when the installation procedure was under the control of Midwest. Haas v. Buick Motor Division, 20 Ill App2d 448, 450, 156 NE2d 263 (1959); 6 Nichols Illinois Civil Practice § 6316 (1962).

Plaintiff is permanently disabled, unable to work and a chronic hospital case because of the brain injuries suffered from this accident. Defendant has not argued that the verdict is excessive.

■ ■ In ruling on a motion for judgment notwithstanding the verdict the single question is whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case. Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847 (1950); Jines v. Greyhound Corp., 46 Ill App2d 364, 197 NE2d 58 (1964); Romines v. Illinois Motor Freight, Inc., 21 Ill App2d 380, 385, 158 NE2d 97 (1959); 3A Nichols Illinois Civil Practice § 3852 (1961). Where there is an evidentiary basis for the jury's verdict, the jury is free to disregard or disbelieve whatever facts are inconsistent with its conclusion and the reviewing court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable. Lindroth v. Walgreen Co. (supra at 134); 3A Nichols Illinois Civil Practice § 3856 (1961).

The testimony offered by plaintiff and defendants was contradictory on virtually every main point. Since our decision is dependent upon an interpretation of the facts in plaintiff's favor we will state the facts in his favor. Plaintiff's credibility was attacked on several occasions through the use of prior inconsistent statements. His testimony was not impeached on factors vital to his right of recovery. We will omit from the statement of facts testimony on which the plaintiff was impeached by prior inconsistent statements.

John Hedge's story established that he had worked for State Wrecking Company since he was fourteen

years old—almost ten years. He had done hand laboring, driven a truck, and run a crane for about one year. He had no mechanical training but was familiar with booms and hoists and knew about pulleys and gears. He had never seen the A-frame truck until a few weeks before the accident after his crane broke. He had driven the truck forward and backward from the cab in and out of the yard and might have used the power winch on a previous occasion.

On the morning of the occurrence Hedge worked with the man from Midwest until 10:00 when he left to pay some traffic tickets. After lunch when he returned the drum shaft was suspended from the A-frame truck at a point slightly above the installation area in the crane. When the installation procedure began John Hedge stepped into the cab of the truck, the man from Midwest said "let it down." The power take off wouldn't go into gear. After trying to put the power winch in gear for a few minutes, Hedge stepped out of the truck and walked to the left side of the truck. The man from Midwest then said, "winch it down, use the hand winch on it." Hedge then put his hands on the handle of the hand winch and exerted a little pressure. The accident happened immediately thereafter. Hedge testified:

> "I did not examine the hand winch before I pulled on the handle. I did not look at the gears at all. I knew that the handle would activate the hand winch. I knew that by looking at it. Just by where it was at. I did not see anything locked between the gears when I grabbed the handle. I didn't look at them. There was a handle there and I grabbed it. That's all I did, yes. No one had to remove anything from between the gears before I grabbed the handles. I did not take anything out of the gears before I grabbed the handle. I pulled

373

the handle toward me. I pulled it down. At this time, I was standing facing the crane. I was looking at the crane. I took the handle and pulled toward me. I reached up for it. I did not have any discussion with the man from Midwest, Mr. Abbott, about not attempting to hoist this drum shaft down with the hand winch. He did not tell me to use the power winch to lower it first, and then when the load on the cable was disconnected to lower the hand winch and adjust the angle. I had no conversation with either the man from Midwest or with Femmer (Boles) regarding the danger of grabbing the handle and trying to lower it by hand when the boom shaft was attached to it. The only thing the man from Midwest told me was to winch it down when the take-off wouldn't work."

 Defendant relies on the proposition that a failure to see what is clearly visible is not such conduct as is compatible with due caution for one's own safety, or a party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the exercise of reasonable and ordinary care. Pantlen v. Gottschalk, 21 Ill App2d 163, 170, 157 NE2d 548 (1959); Munden v. East St. Louis Light & Power Co., 247 Ill App 270, 274 (1928); Albers v. Continental Grain Co., 220 F2d 847 (1955); Withey v. Illinois Power Co., 32 Ill App2d 163, 170–171, 177 NE2d 254 (1961). The question of contributory negligence is ordinarily a question of fact. It is only where no reasonable inference can be made to support the conduct of the plaintiff that it becomes a question of law. The testimony was that the defect in the dog lock was open to one who was looking for it. Taking the story of John Hedge, he knew what a winch was and didn't have to look at it

374

to work it. He testified he was looking at the crane. In Trojan v. City of Blue Island, 10 Ill App2d 47, 51, 134 NE2d 29 (1956) a case which involved an accident caused by an hole in a sidewalk, the court stated:

> "In other words, she was walking along with her son in a normal fashion, without thought of an accident. A pedestrian may ordinarily assume that a sidewalk is in a reasonably safe condition and he is not absolutely bound to keep his eyes on the sidewalk in search of possible defects."

It was peculiarly for the jury to determine whether John Hedge reasonably should have looked at the winch, and, if he should have, should he also have noticed the defective dog lock. We cannot hold as a matter of law that one has a duty to inspect a mechanism for defects before beginning to operate it.

■ Defendant also contends that the principle of the above cases applies because the sole purpose of the winch was to adjust the angle of the "A" and that any reasonable man exercising due care as a matter of law would not have attempted to lower a load suspended from the power cable by means of the hand winch. Several witnesses testified for defendant that the winch was only to direct the angle of the "A" and the angle shouldn't be changed while a weight was suspended. John Hedge's story was that he was directed to use the hand winch, and didn't know the functions of the individual cables. Moreover, he had never used the hand winch before. It again was a question of fact whether a reasonable man might believe that a properly working dog lock would catch on a hand winch while a weight was suspended over the "A." John Hedge testified:

> "I knew that there were two mechanisms to this A-frame truck, that one was a power winch

and that the other was a set of cables that supported the A-frame. I could see that. I guess I knew that the power winch was right behind the cab. I don't know. I could see the winch. In looking at the truck, I guess I could tell that the A-frame was held at an angle by a set of pulleys. I didn't know that the A-frame was held in position by either the hand winch or the power cable. I didn't know which held what. I didn't know which set of cables would raise or lower the drum shaft. I never operated the truck before outside of driving around the yard."

The jury might reasonably have believed that John Hedge had not used the winching apparatus previously; did not know the functions of the separate winches; and, acted solely because of the instructions of Arlie Abbott.

Defendant has appealed from the order of the court denying its motion for a new trial because: 1. the verdict was the result of sympathy created by certain of plaintiff's testimony and his attorney's appeal for sympathy to the jury; 2. prejudicial and self-serving answers to interrogatories were read to the jury; 3. sections of plaintiff's discovery deposition were improperly read to the jury; 4. the court erred in instructing the jury.

When John Hedge was called for direct examination his attorney asked him his name, whether he was married, and if he had any children. Defendant's counsel objected. Defendant argues that when John Hedge was allowed to testify that he was twenty-five, was married and had two children, all of his subsequent testimony was prejudicially influenced by these facts. The rule is that where the only damages recoverable are compensatory in nature, the domestic relations, financial standings or circumstances of the

376

parties are irrelevant and often prejudicial. Jones & Adams Co. v. George, 227 Ill 64, 70–71, 81 NE 4 (1907); McCarthy v. Spring Valley Coal Co., 232 Ill 473, 479, 83 NE 957 (1908); Nelson v. Union Wire Rope Corp., 39 Ill App2d 73, 108, 187 NE2d 425 (1963), revd in part on other grounds, 31 Ill2d 69, 199 NE2d 769 (1964); Falcon v. La Roche, 4 Ill App2d 112, 123 NE2d 587 (abst 1955); 59 ALR2d 371, 374–376. We would be compelled to follow these authorities and find these questions prejudicial were it not that the questions were relevant in this case. As a result of the accident plaintiff sought to show that he had become impotent. It has been held that evidence of the existence of a family may be introduced for this purpose providing that the jury is instructed to disregard the sympathy inducing effects of this information. Postal Tel. Cable Co. v. Likes, 225 Ill 249, 266, 80 NE 136 (1907); Deering Harvester Co. v. Barzak, 227 Ill 71, 76, 81 NE 1 (1907). The questions in this case were not under the circumstances prejudicial since the same information was properly divulged in later testimony in respect to the impotency question. The jury was instructed that neither sympathy nor prejudice should influence them.

 ██ Plaintiff's counsel in his closing argument to the jury stated:

"He has been brought to this stage in his life by doctors and by his own strength and inner fortitude. He is here before you today; it is his last chance. He has no more. This is all that is left in life for John. He wants to rehabilitate himself, to raise his family, to provide for them. He has no other opportunity, ladies and gentlemen, than through the device of this trial and your verdict. He has none."

These remarks were not objected to at the time of delivery. Appellant relies upon the principle that

objection to these remarks at the time of their utterance would have accentuated by repetition their effect upon the jury. We do not believe that these statements were prejudicial. The existence of a family was properly before the jury. If counsel saw other error in these statements an objection should have been made and ruling secured to preserve the question. Department of Public Works & Bldgs. v. Anastoplo, 14 Ill2d 216, 222, 151 NE2d 337 (1958); Dragstrem v. North Branch Metal Products, Inc., 20 Ill App2d 57, 62, 155 NE2d 358 (1959); 3A Nichols Illinois Civil Practice § 3550 (1961).

██ ██ Plaintiff's attorney read interrogatories propounded to John Hedge and answers thereto listing the names of people having knowledge of the events and the names of all doctors who rendered medical services. Defendant charges that Supreme Court Rule 19–11(4) (Ill Rev Stats c 110, § 101.19–11 (4)) was never intended to allow a party to read self-serving statements for the purpose of inducing sympathy. After reading this list plaintiff only produced one medical witness. The listing of the doctors and the production of only one medical witness did have the effect of emphasizing the massive nature of plaintiff's injuries. Since defendant has made no issue of plaintiff's injuries and has not charged that the damages were excessive the introduction of this evidence was not prejudicial. The listing of John Boles, a life long friend of plaintiff, as an occurrence witness, without producing him at the trial was not prejudicial. This witness was equally available to both parties. If an inference would be drawn from this it would be that plaintiff did not call him because his testimony would have been adverse.

 During the course of the trial John Hedge's credibility was attacked through the introduction of prior inconsistent statements made at a

deposition. The court reporter testified that Hedge had made statements inconsistent with his statements that he had never used the winch truck prior to the day of the accident; that he didn't know where Femmer (Boles) was immediately before the accident occurred; and that he didn't know how the drum shaft was raised up with the boom truck on the day of the accident. Hedge's lawyer was then permitted by the court to cross-examine on material which defendant believes was unrelated to the scope of impeachment. The rule was recently stated in Schmitt v. CTA, 34 Ill App2d 67, 72–73, 179 NE2d 838 (1962):

"... Proof of the out of court declarations of a witness, in corroboration of testimony given by him on the trial of the case, is, as a general rule, inadmissible, even after he has been impeached or discredited. (Chicago City Ry. Co. v. Matthieson (1904), 212 Ill 292, 297, 72 NE 443.) These rules are not in conflict with Supreme Court Rule 19–10 (4): 'If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used.'

"As defendant contends, it was never intended by this rule that unrelated questions and answers may be read, which do not explain, modify or reconcile the question and answer upon which a witness may be impeached. However, 'in fairness' can be abused, and the interpretation of 'in fairness' requires the use of sound discretion by a trial judge. A statement may be repetitious of or bolster up a direct examination statement, and yet may be proper in order to avoid the unfairness and distortion which can result if a party is

permitted to read isolated and out-of-context portions of a deposition. Goertz v. Chicago & N. W. Ry. Co. (1958), 19 Ill App2d 261, 271, 153 NE2d 486; Smith v. City of Rock Island (1959), 22 Ill App2d 389, 397, 161 NE2d 369."

See also Annotation: Corroboration—Consistent Statements, 75 ALR2d 909. The trial court is allowed a reasonable discretion in receiving or rejecting evidence of prior declarations of a witness consistent with his testimony after impeachment. 75 ALR2d 918, 923. The three areas read from the deposition by plaintiff's counsel were irrelevant to the statements on which the plaintiff was impeached. The last statement—"He said use the hand winch"—was not objected to at the time and cannot be relied upon by the defendant upon this appeal. The reading of the question—"Did anybody have to remove anything pushed in between the gears?" A. "No."—was waived, although objected to, when defendant thereafter introduced another question from the deposition relevant to that very point. The reading of the question—"How much were you suppose to lower the drum shaft?" A. "Six to eight inches."—although objected to and irrelevant to the impeachment was not prejudicial error because it related to an unimportant aspect of the case and the reading was in no way beneficial to the plaintiff.

■ The court refused to give defendant's instruction 20, which stated:

"If you find from all of the evidence that it was, or should have been, apparent to the plaintiff if he was in the exercise of due care for his own safety that he used a winch mechanism for a purpose for which it was not designed and intended to be used; and if you further find from all of the

evidence that it was, or should have been, apparent to the plaintiff if he was in the exercise of due care for his own safety that such use of said winch mechanism would reasonably be expected to cause injury to him, then you should find the defendants not guilty."

The above instruction constituted an unncessary statement of the necessity of plaintiff being free from contributory negligence in order to recover. There were three other instructions submitted including statements of plaintiff's duty to be in the exercise of due care. Defendant maintains that failure to give the instruction deprived it of presenting to the jury its theory (Sims v. CTA, 7 Ill App2d 21, 29–30, 129 NE2d 23 (1955)) that it was an improper use of the apparatus to attempt to lower a load by means of the hand winch. This instruction was merely a device for calling specific facts to the attention of the jury. It did not adequately cover all the possibilities and the court did not err in electing to instruct the jury in more general language.

Defendant further contends that the court erred in giving plaintiff's instruction 22. Since the trial conference for the setting of instructions has not been abstracted or preserved in the record it has not been shown that the required objection was made at that time and we are precluded from considering this point. Jackson v. Gordon, 37 Ill App2d 41, 45, 184 NE2d 805 (1962); Stewart v. DuPlessis, 42 Ill App2d 192, 201, 191 NE2d 622 (1963). A consideration of all the instructions demonstrates that the jury was not misled on the case as a whole. Johnson v. Jackson, 43 Ill App2d 251, 259, 193 NE2d 485 (1963); Meyer v. Williams, 15 Ill App2d 513, 522, 146 NE2d 712 (1958); Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 329, 146 NE2d 205 (1957).

This case was fairly tried, the jury was cognizant of all the issues and returned a verdict supported by the evidence. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.

## On Rehearing

In our original opinion in dealing with Instruction 22, we said, "Since the trial conference for the setting of instructions has not been abstracted or preserved in the record it has not been shown that the required objection was made at that time and we are precluded from considering this point."

The appellant in its application for rehearing has pointed out that this portion of the record had been preserved and was included in the abstract. We have, accordingly, granted a rehearing on the issue of this instruction.

Plaintiff's Instruction No. 22 given by the Court reads as follows:

"You are instructed that if you believe from perponderance [sic] of the evidence that the Defendant Midwest Contractors Equipment Co., Inc., a corporation, was in charge of, or supervised the installation of the drum shaft, at the time and place complained of, then the Midwest Contractors Equipment Co., Inc. through its employee was obligated to exercise reasonable care and caution to inspect the apparatus used in the installation and to exercise reasonable care to determine if the apparatus and method used to accomplish the installation were safe and to warn the plaintiff of any defects in the apparatus about which

it, through its employee, had knowledge or of which in the exercise of reasonable care should have had knowledge."

The defendants made certain objections to this instruction at the hearing on instructions, and after the jury returned with its verdict made the following post-trial motion concerning this matter:

"There was no evidence to support any of the charges therein contained and no theory of law to support said charges.

"The capitalization of the name of the Defendant in the instruction and the designation of 'a corporation' drew undue attention of the jury to the status of this Defendant in this suit as against Defendant Cohn. There is no definition contained in the instruction, or any of the instructions, of the term preponderance. The instruction as given imposes a greater burden on Defendant Midwest than was charged by the Plaintiff in his Amended Complaint. The instruction assumes a controverted issue of fact. The instruction is ambiguous and misleading in that neither the term 'apparatus' nor 'installation' are defined. The Court's designation of the term 'you are instructed' calls undue attention to this instruction and highlights this particular instruction over the other instructions."

 This being the post-trial motion, the defendants cannot raise new grounds for setting aside the verdict for the first time on appeal. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209 (1960).

We will, therefore, discuss the points raised by the defendant in his post-trial motion one at a time to

determine whether any error was made when the Court gave the jury this instruction.

The first point complained of is that "the name of the Defendant in the instruction and the designation of 'a corporation' drew undue attention to the appellant." Since the instruction dealt with the appellant's duty to the plaintiff and not the duty of any other defendant in the trial, the court was correct in using the name of this appellant to aid the jury in distinguishing this defendant at the trial from the other defendant—Al Cohn d/b/a Alco Steel Service. Nor was the designation of the appellant as a corporation an error. The jury was instructed that a corporation had all the rights of a private individual. It is assumed that a jury follows the instructions given it. People v. DiLella, 52 Ill App2d 403, 202 NE2d 77.

The appellant next urges as error the fact that there was no definition of the word "preponderance" in the instructions. We point to this court's decision in Scerrino v. Dunlap, 14 Ill App2d 355, 144 NE2d 859 (1957) where we said that the word need not be defined. It is a common word of the English language and the jury is perfectly able to ascertain its meaning without instructions on that point from the Court.

As their third point the appellants say that "the instruction as given imposes a greater burden of Defendant Midwest than was charged by the Plaintiff in his Amended Complaint." In the complaint as amended the plaintiff dropped the charge that the appellant was under a duty to inspect the apparatus. The instruction as given by the Court raises the possibility the jury could find that a duty to inspect was incumbent on the appellants. This, of course, is wrong. An instruction should never open the possibility that a jury could find something to be a fact on which there was no competent evidence. Marut

v. Costello, 53 Ill App2d 340, 202 NE2d 853 (1964). The attorney for the appellant, however, did not raise this point at the hearing on instructions. It has often been held that an appellate court will not reverse a trial court on errors that were not properly urged. Jackson v. Gordon, 37 Ill App2d 41, 184 NE2d 805 (1962), Stewart v. DuPlessis, 42 Ill App2d 192, 191 NE2d 622 (1963). We have read the abstract of the proceedings and note that while Plaintiff's Instruction 22 was under discussion in the Court's chambers, no mention was made by the attorney for the appellant of the word "inspect". The argument at the conference centered on whether the instruction in effect told the jury that the appellant had charge of the installation or not. The appellee's attorney specifically stated at that time that the instruction was to tell the jury that the appellant had a duty to inspect, and there was nothing said in the conference about striking that word. We see no reason to send this case back for another trial, incurring additional delay and expense on both sides, where the objection was not made in time for the court to correct its own error.

 The appellant goes on to claim that the instruction assumes a controverted issue of fact. It does no such thing. It does not say that the appellant was in the process of installing the drum shaft; it says that *if* the jury finds that they were in charge, *then* the appellant had certain duties. This is not error. Ramey v. Baltimore & O. S. W. R. Co., 235 Ill 502, 85 NE 639 (1908), 88 CJS Trial, § 280(b), page 753, and cases there cited.

 As a fifth ground for finding error in the giving of this instruction the appellant claims that it is ambiguous and misleading in that neither the term "apparatus" nor the word "installation" are defined. As we said above, words of ordinary usage need not be defined for the jury. Herb v. Pitcairn, 306 Ill App

385

583, 52 NE2d 543 (1940), reversed on other grounds 377 Ill 405, 36 NE2d 555 (1941).

 Finally, the appellant claims that by using the term "you are instructed", the Court called undue attention to this particular instruction. The question was not urged on appeal and we will not consider it here. Having read all the instructions in this case, we believe the jury was properly instructed. Any false impressions which the jury might have received from this instruction certainly would have been corrected by the jury reading the instructions as a whole.

". . . 'As we stated in Kavanaugh v. Washburn, 320 Ill App 250, "Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced." This same doctrine was announced in Reivitz v. Chicago Rapid Transit Co., 327 Ill 207, and Palmer v. Miller, 310 Ill App 582.'

". . . We do not believe that the rulings of the court controvert the modern trend—the now well judicially established principle, as set forth in Duffy v. Cortesi, 2 Ill2d 511, 515, 516 as follows:
" 'The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal. (Kavanaugh v. Washburn, 320 Ill App 250; Stephens v. Weigel, 336 Ill App 36; Anderson v. Brown, 340 Ill App 613.)' " Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205 (1957).

386

We hold, therefore, that there was no prejudicial error committed at the trial by the giving of this instruction. We hold to the result reached in our original opinion.