John H. Savage, Administrator, Appellee, v. Hayes Brothers Company, Appellant.

Gen. No. 5,001.

1. MASTER AND SERVANT—*when former guilty of negligence.* To order a boy, 17 years of age, inexperienced, who was unable to speak or understand English, to work in a place, the dangers of which ought to have been known to the master, constitutes actionable negligence.

2. MASTER AND SERVANT—*what risk not assumed.* A servant, especially a boy under his majority and inexperienced, has a right to suppose that he has been furnished with a reasonably safe place in which to work; he does not assume the risk arising from the defective construction of the building underneath the structure, out of sight, and not shown to have been known to him.

3. EVIDENCE—*as to what opinion competent.* It is competent to show by the opinions of witnesses as to whether or not the construction of a cement house was reasonably safe for the storage of the quantity of cement contained therein at the time of its collapse.

4. EVIDENCE—*when opinions of witnesses competent.* When the facts upon which opinions are founded cannot be ascertained and made intelligible to court and jury, the opinions of witnesses may be received.

5. DAMAGES—*presumption as to, in action for death caused by alleged wrongful act.* Where the deceased is a minor and leaves a father entitled to his services, the law presumes there has been a pecuniary loss from his death, for which compensation under the statute may be given.

6. TRIAL—*when improper allusions in questions not ground for reversal.* Allusions to an insurance company interested in the defense of an action, are improper to be made in questions put to a witness, but held, under the facts of this case, not ground for reversal.

Trespass on the case. Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; R. J. FOLONIE, of counsel.

DONAHOE, MCNAUGHTON & MCKEOWN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellant, a corporation, was a contractor on the works of the Sanitary District of Chicago, engaged in erecting a power house and other improvements for said district near Lockport, Will county, Illinois. Large quantities of cement were needed in its work, which had to be inspected under certain time conditions, and in order to meet those conditions it became necessary to store the cement. To do so, appellant erected a building, hereinafter called the cement house, a few hundred feet from the power house, about 40 feet wide, 80 feet long, and 10 feet high at the eaves, with a half pitch roof. The natural surface of the ground was somewhat uneven, and the soil was of a gravelly nature, ranging from 18 inches to 2 feet in depth above solid rock. The surface of the ground was leveled up with crushed stone of various sizes, 7 rows of planks, 6 feet apart, were laid thereon from north to south, posts were placed on end on top of the planks, and 7 rows of 10 by 10 inch stringers were placed on top of the posts, about 5 feet above the ground. Across the stringers, east and west, 2 inch planks 12 inches wide and 14 feet long, were laid. It required three planks to reach across, with about a foot for overlap at the ends where they were spiked together. The planks were placed a foot apart through the entire building, and upon them the floor was laid, being fastened only at the ends of each piece. No bridging was placed between any of the joists, so that these joists, extending across the 40 feet, were left without support at the sides, nor was any means provided to prevent them from bucking or tipping sideways. There were two doors on the east side of the building, and two on the west. There was a railroad track close to the east side, and the cement was carried directly from the cars into the cement house, where it was piled 9 or 10 feet high, leaving two aisles three or four feet wide running north and south, and one run-

ning east and west. When taken out it was placed in wagons backed up to the west doors. At the time of the accident, the building contained about 27 carloads of cement in bags of about 90 to 100 pounds, weighing in the aggregate about 1,400,000 pounds. About 5 o'clock P. M. on May 15, 1906, John or Jovan Stulic, an Austrian boy about 17 years old, who had been in the United States only a month and a half, who could not speak nor understand English, was at work with three or four of appellant's other employes in the cement house, when some of the posts gave way, and the joists turned flatwise, the floor fell, the building collapsed, and he was found dead the next day under some 550 sacks of cement. Whether deceased was engaged in moving cement from the car into the cement house, or from the cement house into wagons, when the house collapsed, cannot be definitely determined. On June 15, 1906, appellee, John H. Savage, who had been previously appointed administrator of the estate of deceased, brought this suit in the Circuit Court of Will county to recover for the pecuniary loss sustained by Elias Stulic, the father, Vacil Stulic, a brother, and Annie Stulic, a sister, next of kin of deceased. The declaration contained nine counts and fills fourteen pages of the record. It is sufficient here to state that it averred deceased's employment by appellant, his exercise of due care when injured, his death and its manner; and appellant's negligence in the use of insufficient materials in the cement house, and negligence in its construction, and negligence in overloading the same. There was a plea of not guilty, a trial and a verdict for appellee for $1,500. A motion for a new trial was denied. Judgment was entered on the verdict, and this appeal is prosecuted by the company.

The record discloses that the cement house had shown evidence of a collapse for some time previous to the accident, and that the attention of appellant had been called to its dangerous condition. It appears that. James Francis, employed in and about the cement

house, testified that he reported to appellant's president that he heard something give way, and that the president replied that the building could not fall; and that it would hold all the cement that could be put into it, and to put in all it would hold. Appellant's president denied that he had such a conversation with Francis. But Riley, appellant's inspector of the cement house, testified that several times previous to the accident Francis called his attention to a sound like wood cracking in the building, and that he heard such noises at intervals for two or three weeks before the accident. Peters, a contractor employed by appellant, testified that he had in company with a civil engineer inspected the cement house several times; and that three weeks before the accident they went over the building, and finding the floors out of level, had it jacked up; and that the southeast corner had settled five or six inches. About a week before the accident, he found the floor had settled and put men at work to right it, which they did by jacking it up and driving long tapering wedges on top of the posts; and that the weight of the cement caused the ground underneath to settle; and that he had noticed that the filling of the cement house would sometimes cause the posts to settle a little.

Appellant argues that negligence was not proven. We are of the opinion that the negligence charged in the declaration is clearly supported by the evidence. The proof shows that the building was of unsafe and faulty construction, and that it was very much overloaded at the time of the accident; and that appellant knew of its unsafe condition or ought to have known of its unsafe condition, as it appears slight attempts at repairs were made three weeks before, and one week before the building collapsed. To order a boy of the age and inexperience of deceased, who was unable to speak or understand English, to work in a place, the dangers of which ought to have been known to appellant, certainly amounts to actionable negligence.

It is argued that the danger of the collapse of the cement house was a risk assumed by deceased. We are of the opinion that deceased had a right to suppose that he had been furnished with a reasonably safe place in which to work; and that he did not assume the risk arising from the defective construction of the building underneath the structure, out of sight, and not shown to have been known to him. We think the fact that he was engaged in the regular business of his employer, working in the place his employer provided, and under the direction of the employer's foreman, and in the absence of all proof that he was doing anything out of the ordinary, or anything outside his daily duty, warranted the jury in finding he was in the exercise of due care.

Appellant contends the court improperly admitted the evidence of certain witnesses who undertook to give their opinions as to whether the construction of the cement house was reasonably safe for the storage of the quantity of cement contained therein at the time it collapsed, it being urged that this testimony falls under the rule that even an expert should not be allowed to give an opinion where all the facts upon which the opinion is based can be made sufficiently intelligible to court and jury. Whether this cement house, constructed and filled as it was with 1,400,000 pounds of cement, was dangerous, clearly was not a matter of common knowledge, and therefore plain and open to the jury. When the facts upon which opinions are founded, cannot be ascertained and made intelligible to court and jury, the opinions of witnesses may be received. City of Chicago v. McGiven, 78 Ill. 347; Illinois Central Railroad Company v. People, 143 *id.* 434; Gundlach v. Schott, 192 Ill. 509. To say the least, it was not in our opinion, a matter of so common knowledge to the jury that it can be said that the trial court committed error in permitting the introduction of expert testimony. In many cases it may be difficult to say whether or not the construction of the subject-

matter under consideration is so intricate that the jury cannot be made to understand it fully without admitting the opinion of experts, and the court must therefore often exercise a discretion to determine when such evidence may be heard. Gundlach v. Schott, *supra.*

The court refused the 13th instruction requested by appellant which said that there was no evidence that the father had any right to the wages of deceased. The proof was that the deceased was under age and that he left a father. Where the deceased is a minor and leaves a father entitled to his services, the law presumes there has been a pecuniary loss from his death, for which compensation under the statute may be given. C. & E. I. R. R. Co. v. Huston, 196 Ill. 480. In this case there was nothing to rebut the presumption.

The court refused appellant's 14th instruction, which was to the effect that if the deceased's earnings did not exceed his living expenses, only nominal damages could be recovered. This instruction was properly refused, because the father had a right to withdraw deceased from appellant's services, and put him to work for himself. C. & E. I. R. R. Co. v. Huston, *supra.*

The court refused appellant's 15th instruction, which related only to the right of the brother and sister to recover. This instruction was properly refused. B. & O. S. W. v. Then, 159 Ill. 535.

Appellant's 16th instruction was properly refused for the same reasons indicated as to the 14th and 15th instructions.

There is, in our opinion, but one serious question in this record. James Francis, a witness for appellee, having been cross-examined by appellant with reference to a statement he had signed concerning the accident, after it had been prepared by one Garrett, was re-examined as to why the statement was sought from him, and stated that Garrett was an agent of the insurance company. This answer was excluded by the

court. Thereafter, and after Francis had been repeatedly asked by appellant on cross-examination if he had not made different statements to Garrett at the time of signing the statement than his statement in court, and after the statement had been introduced in evidence, he was asked several questions by appellee's attorney as to whether Garrett said he was working for an insurance company and if he gave any other reason why he wanted the statement, except for the insurance company. Objections were sustained to each of these questions, and appellant preserved several exceptions to the language used therein. Under the authority of McCarthy v. Spring Valley Coal Co., 232 Ill. 473, we do not doubt that it was improper for appellee's attorney to make these allusions, and it is to be regretted that the verdict, otherwise right, should be imperiled by the course pursued by appellee's attorney, especially as the ruling of the trial court indicated the danger of such conduct. However, we are of the opinion that this should not be considered reversible error in this case. First, Francis' original reference to the insurance company was not responsive to any question, and the suggestion that the insurance company was the one procuring the statement through Garrett was therefore brought into the case in the first instance without fault of the appellee or his attorney. Second, the case is strong on its merits and the damages are exceedingly moderate, which indicates that the jury were not led astray or prejudiced by the reference to the insurance company.

The judgment is therefore affirmed.

*Affirmed.*