CHICAGO—FIRST DISTRICT—JANUARY, 1911. 437

Ryan v. Illinois Telephone Construction Co., 159 Ill. App. 437.

## Cornelius Ryan, Appellant, v. Illinois Telephone Construction Company, Appellant.

### Gen. No. 15,148.

1. TRIAL—*when remarks of counsel will not reverse.* *Held,* that while references to insurance companies made in an action on the case for personal injuries were highly improper, yet that under the authority of McCarthy v. Spring Valley Coal Co., 232 Ill. 473, they did not constitute ground for reversal.

2. MASTER AND SERVANT—*when fellow servant rule applies.* If an injury results from the carelessness of a fellow-servant, such injury not being contributed to by the negligence of the master, the servant injured cannot recover of the master.

3. MASTER AND SERVANT—*when doctrine of assumed risk applies.* A servant who knowingly assumes a position of danger which position for some days previously he had likewise assumed without complaint, if injured in consequence thereof, cannot recover.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of fact. Opinion modified and refiled January 31, 1911.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook county in favor of appellee for $1,800 for personal injuries sustained by him. The declaration consists of two counts, and charges, in substance, that on the 19th of June, 1902, defendant was engaged in constructing tunnels under the city of Chicago, and employed the plaintiff as a common laborer, in that section of the tunnel or shaft located at Market and Congress streets, Chicago; that it was the defendant's duty to furnish a reasonably safe place in which plaintiff could perform his duties; that plaintiff was set to work by the foreman or agent of the defendant, who was a superior, and not a fellow servant, of the plaintiff, at escorting loaded cars from the tunnel to the mouth of the shaft, and in so doing was directed by the foreman to ride upon the forward or head end of the dump car; which, with others, was used for carrying dirt and debris out of

438 APPELLATE COURTS OF ILLINOIS.

Ryan v. Illinois Telephone Construction Co., 159 Ill. App. 437.

the tunnel, and ran along upon an incline; that the dump cars were propelled from along the bottom of the tunnel up the incline by a chain device, to which were attached spikes or projections, so arranged that when said cars were loaded they were placed upon the track at the lower end of the incline, and, when the chain device revolved the spikes or projections caught on the axle or rear end of the dump car, by means of which the dump cars were propelled forward and up the incline to where they were to be dumped; that the chain to which these spikes were attached was not kept tight, but was allowed to sag, by reason of which the spikes slipped and dropped down from the axle or slots; that the spikes were not firmly fastened or attached to the dump cars, or any of them, but were allowed to become covered with grease, making them slippery; that said mode of propelling said cars out of the tunnel was necessarily dangerous, and was well known by defendant to be so; but plaintiff had no knowledge of the danger; that it was the custom and habit to have several loaded cars propelled up said incline by said chain device at the same time, thus making the method more dangerous, as the defendant well knew, but as plaintiff did not know; that while carrying out the instructions of the foreman, who was not a fellow servant, plaintiff seated himself upon the forward end of one of the dump cars, going up the incline; that immediately preceding him was another loaded car; and that, through and by the negligence of the defendant in failing to furnish a reasonably safe mode and manner of propelling said dump cars up the incline, and reasonably safe machinery to so propel them, and in failing to furnish the plaintiff a reasonably safe place in which to perform the work, the preceding dump car broke loose, and running downward and backward bumped violently against the plaintiff, breaking his leg and otherwise injuring him.

It appears that appellee began working for appellant in January, 1902, and continued in its employ until June 19th of that year, the date of the injury. He was employed as a laborer, and his principal duty was to push cars loaded with mud or muck from the top of the incline, up which the cars were brought out to the Chicago river, where the contents of the cars were dumped into mud scows.

When the cars were filled with mud by the miners or excavators they were shoved out through a lock or air-chamber, to the bottom of the incline, which was about one hundred feet long, and ascended at an angle of about forty-five degrees. Upon this incline there were two tracks. The cars were about four feet high, three feet long and two feet wide, with a carrying capacity of about one thousand pounds of mud. These cars were lifted or conveyed to the top by means of an endless chain, working on sprocket wheels at the top and bottom of the incline. Upon this chain were projections called dogs, which stuck up about five or six inches, so that when a car was pushed forward the dog would engage, with its flat surface, the round surface of the axle of the car, and thus convey the cars up the incline to the top. At that point the cars were met by laborers, of which appellee was one, and pushed by hand to the river, where they were dumped on scows, and the cars were then returned down into the tunnel and distributed. These cars were reversible, so that, at times, the back axle was the front, and vice versa, and the axles were about three inches from the ground, and the cars would go up the incline hooked either on the front or rear axle. These cars were loaded by miners, and were some times made much heavier in the rear than in the front by carelessly filling the earth or muck more in the rear than in the front end of the car, so that, when they were being taken up the steep incline of the shaft, they were occasionally tipped over backward, or sideways,

**440**    APPELLATE COURTS OF ILLINOIS.

Ryan v. Illinois Telephone Construction Co., 159 Ill. App. 437.

and this fact was known to the superintendent, who gave orders to the sub-foreman to send men down from the top of the incline to ride the cars, whenever they were improperly loaded, instead of waiting to have the cars trimmed or "mucked," as the operation of leveling the load in them was sometimes called.

Ryan, the plaintiff, was an elderly man and therefore was not so often directed to ride the cars up the incline as were the other and younger employes.

On the night of the accident, some cars having come through the lock, or air-chamber, improperly loaded, appellee was directed to go down and ride them up the incline. He got upon the front end of an ascending car, hanging his feet and legs over the end, to counterbalance, by his weight, the load. His car was preceded by another similarly loaded, which, when it reached the top of the incline, became loose and ran back against him, resulting in serious injuries.

From the evidence it appears that the accident occurred because the car which ran back upon the plaintiff, while he was riding up one of the cars, was being propelled upward by the dog or spike on the endless chain being placed against its front axle, instead of its rear axle, and that, therefore, the car was not sufficiently carried over the top of the incline, as it would have been had the rear axle instead of the front axle been attached. The evidence further shows that the car was thus attached to the dog or spike at the front instead of the rear axle by a laborer named Withers.

JOHN A. BLOOMINGSTON, for appellant.

ROBERT F. MUNSELL, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Appellee bases his right to recover upon the propositions that appellant had not used reasonable care

to furnish him with a reasonably safe place in which to perform his labor at the time of the accident; and that it was negligence for appellant to order him to ride up the steep incline, as human ballast, for improperly loaded cars, with knowledge of the fact that preceding cars might run back down the incline; also, that the order being negligent, the danger in obeying it was not so imminent but that a man of ordinary prudence would have incurred it, under all the circumstances.

Appellant contends that the judgment should be reversed, because of the prejudicial statements of counsel at the trial, and evidence erroneously admitted as to the insurance companies defending the case; also, because the evidence does not sustain the verdict under the pleadings, and because the alleged injury was caused by the negligence of a fellow servant, and in any event, that appellee assumed the risk.

As to the first of these, we think it was highly improper for the attorney of appellee to make the complained of references to insurance companies, and the insinuations as to their relation to the defense of the case. However, in view of all the circumstances, and following the authority of McCarthy v. Spring Valley Coal Co., 232 Ill. 473, we do not regard the action complained of as constituting reversible error.

For a week appellee had been riding these cars in the same manner, and for the same purpose, which he himself says was to keep them from overbalancing backward. He was upon the front end of the car for the purpose of having his weight counterbalance the load, so that the car would not tip backward. He rode up several times during the period he worked that night, and, though he testified that he did this by the direction of the foreman it is pretty evident from the testimony that Ryan was engaged in doing that which was incidental to his work, and which had been done by him repeatedly on that night, and previously.

Appellee appears to have been entirely familiar with the situation and the surroundings. If the car which, by running back upon Ryan, injured him, was improperly attached by the dog on the endless chain to the front axle, instead of the rear axle, we think the evidence clearly shows that this was due to the carelessness of a workman by the name of Withers, and that Withers was, at the time, a fellow servant with Ryan. Appellee was injured, not because the place in which he was working was not a reasonaby safe place in which to work, but because he knowingly placed himself in a dangerous position by riding up on the front end of the cars, and because a fellow employe caused the car preceding him to be improperly attached to the upward bound chain.

While it seems a hardship that appellee should have received so serious an injury, we do not see how, under the law of this State, he can recover, under the circumstances shown in this case. This case and others like it emphasize the necessity of some adequate workman's compensation act, which shall abolish the fellow servant rule, and also that of assumption of risk as now applied, and provide that the financial burden thus created shall be imposed upon the business in which the injuries are suffered, in such manner as they may be insured against.

We think the evidence requires us to reverse the judgment of the court below, and enter judgment here upon a finding of facts.

*Reversed with a finding of facts.*