**William Bliss, by David E. Bliss, Father and Next Friend, Appellee, v. Harley C. Knapp, Appellant.**

**Gen. No. 10,129.**

Opinion filed April 18, 1947.   Released for publication May 5, 1947.

MAYNARD & MAYNARD, of Rockford, for appellant.

STANLEY H. GUYER, of Rockford, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal by the defendant, Harley C. Knapp, from a judgment entered by the circuit court of Winnebago county, on a jury verdict of $4,000 in favor of the plaintiff, William Bliss, who sustained certain personal injuries in an automobile collision.

There are essentially two legal issues presented by this appeal: whether the verdict of the jury is against the manifest weight of the evidence, and whether the circuit court erred in refusing to give the jury certain instructions submitted by the defendant with reference to contributory negligence.

In the instant case the evidence with reference to the collision is sharply in conflict, and, therefore, in order to determine whether the jury's verdict was contrary to the clear weight of the evidence, this court will examine all of the testimony pertaining to the collision.

Plaintiff's interpretation of the collision was presented in his own testimony, and was corroborated by that of John Repke, the driver of the car in which plaintiff was riding. It appears that on February 1, 1945, between 2 and 2:30 p. m. plaintiff, who was temporarily home from the navy, and John Repke, also a navy man, went out for a drive in Repke's uncle's car. Repke drove, and they rode from plaintiff's home in South Beloit, Illinois, to the City of Rockford, which they toured without stopping anywhere, and around 4:15 p. m. they started back to Beloit. They were just

north of the Village of Rockton when the collision occurred.

To properly comprehend either plaintiff's or defendant's theory of the collision, reference must be made to the course of the highway. Near the north end of the Village of Rockton the road curves east and runs east for less than a quarter of a mile; it then curves north again and runs straight north for almost a mile. This second curve is intersected by a railway, and it was at this intersection that plaintiff and Repke stopped to pick up their friend Moldenhaur and then proceeded north for another quarter of a mile to the point where the collision occurred.

As plaintiff, Repke, and Moldenhaur rode northward, plaintiff and Moldenhaur conversed, while Repke put in a word here and there. During the course of the conversation plaintiff glanced up at the road, saw some south bound cars but paid no particular heed to them until he saw the car apparently driven by the witness Sweeney coming toward them in the southbound lane some 40 or 50 feet away, and then noted a second car, that driven by the defendant, pull out from behind the Sweeney car and come across the black line into the northbound lane, apparently endeavoring to pass the Sweeney car.

Plaintiff contends that he first saw defendant's car when it was just 30 to 35 feet ahead and was pulling around the rear end of the Sweeney car and extending two or three feet east of the center line. The sequence of events thereafter occurred so swiftly that plaintiff could not recall whether or not he had shouted a warning, but he assumed that he must have braced himself for an accident.

The left front end of the defendant's car collided with the left front portion of the Repke car. As a result of the impact the Repke car turned over and landed on its side east of the pavement some 20 to 35 feet northeast of the defendant's car, and was facing

southward. It was severely damaged with the left front wheel bent parallel with the ground, the left fender bent in towards the motor, the front grill smashed, the left end of the front bumper bent towards the wheel, the left front door dented in, and the left running board torn up.

Defendant's car, however, was standing in the highway in a southeasterly direction, approximately at the place of the collision with its front wheels extending a foot and a half to two feet east of the center line. Its front fender was bent back towards the car, the frame was broken, and the front bumper was smashed and torn off.

As a result of the collision the plaintiff sustained fractures of the tibia and fibula of his right leg, and two teeth were chipped. He was treated first at Beloit hospital, and then removed to Great Lakes Naval Station Hospital where he remained for 60 days. The injuries resulted in some shortening of the bone, and consequently some loss of use of his right leg.

The foregoing version of the collision is controverted by the testimony of the defendant, Knapp, and that of Sweeney, an allegedly disinterested witness. According to their interpretation defendant was driving some 65 feet behind the Sweeney car in a southbound direction on the road toward Rockford. Just north of the Rockton curve, Sweeney contends, that he saw the Repke car come 200 to 300 feet down the road traveling entirely on the west side of the highway. He claims that he blew his horn and turned on his brake lights to signal the defendant and then slowed down. Defendant continued driving behind Sweeney until his car was approximately 100 feet behind the Sweeney car.

Sweeney further testified that he pulled off the road entirely and that the Repke car continued driving ahead in the southbound lane until it collided with the defendant's car.

Defendant insists that he saw the Repke car for the first time after the Sweeney car was completely off the highway, and that the Repke car was then 50 or 60 feet ahead of him. He then stopped and the Repke car hit his car with a slanting blow, the impact of which turned his car across the highway so that it extended east of the center line.

From the foregoing evidence it appears that the conflicting theories are presented with approximately equal vigor, and that the only uncontroverted facts are the damages to the cars, their respective positions after the collision, and the fact that the Repke car was being driven about 30 to 45 miles an hour.

It is difficult to understand how witnesses could honestly disagree so completely on how this accident happened. The version of plaintiff's and defendant's witnesses are irreconcilable and in hopeless conflict. As we have often declared, it is not the province of this court to substitute its judgment for that of the jury, or to upset the verdict even if it were to reach a contrary conclusion, for that would be invading the constitutional prerogative of the jury. (*Shevalier v. Seager*, 121 Ill. 564, 569; *Antosz v. Goss Motors, Inc.*, 311 Ill. App. 254; *Smith v. Courtney*, 281 Ill. App. 530.)

In the *Smith* case, *supra*, which involved a head-on collision between vehicles traveling in opposite directions, the court stated at p. 535 with reference to a conflict in the evidence similar to that in the case at bar:

"It was for the jury to say whose evidence they would believe as true and since they have adopted the evidence of the plaintiff as being the more credible and the same having been approved by the trial court, this court would not be warranted in reversing the judgment on the grounds that the verdict was not supported by a preponderance of the evidence."

In the instant case, therefore, the circuit court did not commit error in denying defendant's motion

for a new trial, for the verdict of the jury was not against the manifest weight of the evidence.

The court will next consider the propriety of the circuit court's refusal to give the jury certain instructions with reference to contributory negligence submitted by the defendant.

Refused instruction No. 4 informed the jury that if a passenger has an opportunity to learn of danger and avoid it, it is his duty to warn the driver of such danger.

This instruction constitutes an incomplete, and hence an inaccurate statement of the law inasmuch as it omits the essential elements of whether or not plaintiff saw the defendant's car before the driver did, whether he could have given warning, and whether the warning, if given, would have averted the accident. Moreover, it does not define the degree of diligence required of plaintiff in learning of the danger. (*Avey v. Medaris,* 272 Ill. App. 207, 210; *St. Clair Nat. Bank of Belleville v. Monaghan,* 256 Ill. App. 471.)

Courts have rephrased and reiterated the duty of a passenger in an automobile in a multitude of cases. An extensive review of the decisions is presented in *Hagen v. Bailus,* 283 Ill. App. 249 where a passenger riding in the front seat sought damages for injuries sustained as a result of a collision between the car in which she was riding and a third car. It was contended therein that plaintiff was as a matter of law guilty of contributory negligence because she did not warn the driver of the approaching car. With reference thereto, the court stated at p. 251:

"Moreover, a passenger in an automobile need not warn the driver of the approach of other automobiles which the driver sees. In *Hoffman v. Yellow Cab Co.,* 238 Ill. App. 269, the passenger failed to warn the driver of the approach of the other automobile. It was held it must be presumed the driver saw the approach-

ing automobile, but even if the driver did not, it was a question of fact to be determined by the jury whether plaintiff was guilty of contributory negligence . . ."

This same rule is propounded in *Rhoden v. Peoria Creamery Co.*, 278 Ill. App. 452, 465; and in *Lasko v. Meier*, 327 Ill. App. 5, where the court stated at p. 10:

"We do not consider it to be the law that in every case a guest or passenger is guilty of contributory negligence merely because he says or does nothing at the time of or immediately before an accident. We believe in many cases a jury could well believe that the highest degree of caution in a particular case may consist of inaction on the part of a guest or passenger.

In the light of the foregoing established principles, the circuit court's refusal to give the jury defendant's instruction No. 4 was clearly not in error.

Defendant's instruction No. 5 was properly modified by the court by striking out the words, "still the plaintiff could not blindly rely upon the driver of the said automobile and exercise no care whatever for his own safety," inasmuch as there was no evidence that the plaintiff had "blindly" relied upon the driver or exercised no care whatever for his own safety. The instruction, as tendered, improperly assumed and emphasized these facts, and would have misled the jury.

Defendant's refused instruction No. 6 was objectionable for the same reasons set forth in opposition to instruction No. 4, inasmuch as it instructed the jury that if plaintiff failed to use his senses and faculties to warn the driver of the car he was guilty of contributory negligence.

Furthermore, this instruction was objectionable for other reasons. It erroneously assumed that plaintiff's failure to warn the driver caused or proximately contributed to his injury; and as a peremptory instruction it omitted an essential element, in that it assumed

that there was an approaching danger, and did not define it, or require the jury to find that the danger in fact existed. *Roedler v. Vandalia Bus Lines, Inc.*, 281 Ill. App. 520, 527.

Defendant's refused instruction No. 7 which directed a verdict for defendant was objectionable on the ground that it failed to contain all the elements essential to show that defendant was not guilty of negligence. This instruction singled out the following facts: that the car in which plaintiff was riding approached from the south on the west side of the black line; that defendant was driving on the west side of the black line; and that he stopped on the west side of the black line.

Other elements necessary to indicate that defendant was not guilty of negligence would include: the speed of the cars, the conduct of defendant after seeing the brake lights of the Sweeney car go on; whether or not defendant was in the exercise of due care in observing the oncoming car before the Sweeney car allegedly turned off the highway; and whether defendant was driving on the west side of the pavement in the manner of an ordinary prudent man prior to and at the time the collision became imminent.

Defendant's refused instruction No. 8 is argumentative, assumes the passenger has a duty to warn the driver and also singles out and assumes a fact upon which the evidence was in conflict. It is allegedly patterned after the case of *Pienta v. Chicago City R. Co.*, 284 Ill. 246, but the instruction approved therein was predicated upon uncontroverted facts in contrast to the situation in the instant case.

Defendant's refused instruction No. 9 is covered in substance by instructions Nos. 14, 15, 16 and 17 given on behalf of the defendant by the court. It is clearly established that a court may properly refuse tendered instructions where the essential ele-

ments contained therein are covered in other instructions. (*Chicago Union Traction Co. v. Roberts*, 131 Ill. App. 476; *Chicago City Ry. Co. v. Fennimore*, 199 Ill. 9; *Roedler v. Vandalia Bus Lines, Inc.*, 281 Ill. App. 520.)

Defendant's refused instruction No. 11 was objectionable because it improperly singled out a fact which was not in evidence. (*Brown v. Kelly Coal Co.*, 162 Ill. App. 65; *Pillow v. Long*, 299 Ill. App. 542.) It assumed that Repke drove from the east side of the pavement to the west side of the center line, whereas all of the testimony offered on behalf of the defendant was that the Repke car was being driven on the west side all of the time, and the evidence submitted on behalf of the plaintiff was that the car was on the east side of the center line before and at the time of the collision.

The groundless assertion made by the defendant that the court did not give a single instruction on the subject of contributory negligence is unequivocally refuted by instruction Nos. 12, 13, 15 and 17 appearing in the record which cover all phases of contributory negligence under the circumstances of the instant case. Those instructions constitute a clear and complete statement of the appropriate rules of law for the guidance of the jury.

It is the judgment of this court, therefore, that there was no error in the circuit court's refusal to give the jury the aforementioned instructions tendered by the defendant, and that the verdict of the jury was neither predicated upon an erroneous interpretation of the law, nor contrary to the manifest weight of the evidence. The judgment rendered on that verdict, therefore, should be affirmed.

*Judgment affirmed.*