Mary M. Parrucci and Fernando Parrucci, Plaintiffs-Appellees, v. Elroy E. Kruse, Defendant-Appellant, Anna Lomedico, Defendant-Appellant.

## Gen. No. 10,972.

Second District.

November 9, 1956.

Released for publication November 28, 1956.

Carbary and Carbary of Elgin, for appellant, Anna Lomedico; George D. Carbary and Paul M. Hamilton, both of Elgin, of counsel. Sears and Streit of Aurora, for Elroy Kruse, appellant; Robert F. Casey, of Aurora, of counsel.

Kramer & Kramer of Elgin for plaintiffs-appellees, Mary Parrucci and Fernando Parrucci; Robert B. Kramer of Elgin, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by plaintiff, Mary Parrucci, arising out of an automobile collision which occurred at an intersection in the City of Elgin. Plaintiff, Fernando Parrucci, also brought suit as the husband of Mary Parrucci and sought certain damages by reason of the relationship.

Mary Parrucci was a passenger in the automobile driven by defendant, Anna Lomedico, and the suit is brought against Anna Lomedico her host, and against Elroy E. Kruse, driver of a car which collided with them. The jury returned a general verdict for the plaintiff, Mary Parrucci, in the amount of eleven thousand ($11,000) dollars, jointly against both defendants, and for the plaintiff, Fernando Parrucci, in the amount of one thousand ($1,000) dollars. In addition, the jury returned a special interrogatory finding defendant Lomedico guilty of wilful and wanton misconduct. Defendant Lomedico filed a motion for judgment notwithstanding the verdicts, and defendant Kruse filed a motion for judgment notwithstanding the verdict and for a new trial. All motions were denied and the court entered judgment upon the verdicts, from which this appeal is taken.

Anna Lomedico filed a separate suit against Kruse, now pending in the City Court of Elgin, which was the subject of a motion for consolidation filed in this case and denied November 10, 1955.

Plaintiffs' original complaint, consisting of two counts, was filed August 5, 1954. An amended complaint was filed November 5, 1954 containing eight counts, six of which were subsequently withdrawn. The amended complaint alleges that plaintiff, Mary Parrucci, was riding as a guest in the car driven by defendant Lomedico northerly on Hill Avenue near the intersection of Hill with Summit Street, designated as Illinois State Route 58, and that said defendant was guilty of numerous acts of wilful and wanton misconduct, including the allegation that defendant Lomedico drove past and through a stop sign without stopping and that she failed to come to a full stop before entering the intersection. These allegations were withdrawn by counsel for plaintiffs on the day the case was called for trial.

Defendant Kruse was charged with various acts of negligence and carelessness in driving an automobile east on Route 58 approaching the intersection with Hill Avenue, including a specific allegation that he drove and operated his motor vehicle while under the influence of intoxicating liquor.

Count II of the amended complaint made the same general charges against both defendants on behalf of plaintiff Fernando Parrucci. Defendant Lomedico denied all allegations of wilful and wanton misconduct and denied that plaintiffs were entitled to recover from her. Defendant Kruse, by his answer, denied all allegations of negligence and denied that the plaintiffs were entitled to recover from him.

The errors relied on for reversal by appellant, Anna Lomedico, are that the court erred in denying her motion for directed verdicts and her motion for judg-

ment notwithstanding the verdicts; that there was no evidence to support the verdict or the special interrogatory finding her guilty of wilful or wanton misconduct; that there was no evidence to support the judgment, and that the verdicts of the jury and the judgment of the court were contrary to the law and should be reversed.

Defendant Kruse's theory is that there is no evidence of any negligence on his part; that the plaintiff was guilty of contributory negligence as a matter of law and accordingly, the trial judge should have directed a verdict in favor of said defendant. Furthermore, that the trial court should have granted defendant a new trial because of improper conduct of plaintiffs' counsel and the trial court's error in submitting to the jury various instructions on behalf of the plaintiffs.

This action arose out of a collision of two motor vehicles on July 25, 1954 at the intersection of Illinois State Route Number 58, also known as Summit Street, and Hill Avenue in Kane County at about 6:30 P.M. D.S.T. Mrs. Parrucci, who had never driven an automobile, was a guest of defendant Lomedico. She was a small person, about five feet tall, 44 years old, and weighed about 130–135 pounds. She had previously ridden with her neighbor, Mrs. Lomedico, on four or five occasions and she had found her to be a very careful driver.

Summit Street or Route 58 is a four-lane highway running in an easterly and westerly direction and is approximately 42 feet wide. Hill Avenue is a 36 foot paved highway extending in a northerly and southerly direction. West of Hill Street on Summit there is a dip of approximately 15 feet, which continues about one hundred or one hundred fifty feet before it levels off. There is a vacant lot on the southwest corner of Route 58 and Hill Avenue with about one hundred

34

feet of frontage on Hill Street. This lot extends about one hundred fifty feet on the south side of Route 58. Except for the dip and foliage shown on plaintiffs' exhibits, there were no obstructions to the views of the drivers of the motor vehicles which figured in the collision. Route 58 is heavily travelled and Hill Avenue is normally travelled. The speed limit on Route 58 is 35 miles per hour and on Hill Avenue 25 miles per hour. There is a stop sign on Hill Avenue about 8 to 12 feet to the south of the intersection, protecting traffic on Route 58 from northbound traffic on Hill.

At the time of the occurrence in question, defendant Lomedico was driving her Hudson sedan in a northerly direction on Hill Avenue on her way home. Plaintiff, Mary Parrucci, was riding in the front seat beside Mrs. Lomedico. Defendant Kruse was driving in an easterly direction on Route 58 towards the intersection of Route 58 with Hill Avenue. The testimony is very conflicting as to the accident. Mrs. Lomedico never saw the Kruse car and Kruse never saw her until about twenty or thirty feet away. Plaintiff, Mary Parrucci, testified that there was a stop sign at Hill Street and Route 58 and that it was on her side of the car; that the sign was eight, nine or ten feet from the south curbing of Route 58, almost directly across the street from the telephone post on the southwest corner; that Mrs. Lomedico stopped at the stop sign for about a minute and a half, and that plaintiff did not see the cars coming from the east going west; that she wasn't paying attention; that she didn't remember if there was anything to keep her from looking to the right or looking to the left as she sat in the car; that she just turned her head and all she could say was "Oh Annie", that she saw a light car coming right at them and that at that time it seemed to her that the front of their car had progressed into the second lane of the intersection; that there was a big bang and she

35

just glanced at Mrs. Lomedico and she slumped towards her and her head was bleeding; "that the car started to go real fast and it seemed like it went through, over the weeds and the pole and something there real fast; I could see a white house coming towards me real fast and then all at once there was a big flash. I felt something jar me and the next recollection I had after the big flash was like something burning me; I don't know what. I do not know where I was at the time of that first recollection. I do not remember the ambulance. I remember I was on the ground. I do not remember anything at the hospital on that same day. I don't know if it was the day after or two days after that I first recall consciousness and talking to anyone." On cross examination she stated that she did not remember if she looked at all to the left or Dundee Avenue; that she did not pay any attention to the traffic on the highway as she sat there; that she remembered Mrs. Lomedico's passing the first lane of travel on the south side of Route 58; that they went quite a way; that she thought she got past the second lane of travel on Route 58; that she could not give any period of time that she watched the car coming; that it was just like a flash coming; that she did not have an opportunity to observe the speed that it was coming; that Mrs. Lomedico was driving at a reasonable, ordinary rate of speed; that she was sure that Mrs. Lomedico was more than half way across Route 58 before she was struck; that she had never ridden through the intersection with Mrs. Lomedico before and had never come up Route 58.

Defendant Kruse was called by plaintiffs for cross examination under Section 60 [Ill. Rev. Stat. 1955, ch. 110, § 60]. He testified that he owned a 1951 Buick Super; that he owned a dental lab and also the High Bridge Tavern; that July 25, 1954 was a rather hot Sunday; that he drove out to the tavern about 10:00

in the morning; that he was very well acquainted with the section of Summit and Hill, having had occasion to pass through the intersection many times; that when he got to the tavern he checked business from the day before; that he had customers right away after twelve o'clock; that about ten minutes before opening time he had a beer—a Hamm's, a short bottle; that the next shortie beer he had after the first one was maybe an hour later; that he had eight or ten shorties during the course of the afternoon starting with the one about ten minutes to twelve; "We shook dice for them to see who was going to buy. I did not drink any large bottles of beer in the course of the afternoon." He testified further that he left the tavern about 6:30, Daylight Savings Time; that it was still light and it was a dry day; that he was coming home for dinner at 6:30; that it was about 2½ miles from the tavern to his home; that Route 58 as it moves from west to the east is "relatively flat, and then it goes up an incline and you come up on another level and go into the intersection." He testified that he stopped at the stop sign at Dundee Avenue and Summit Street; that after he got around the corner and started off he went 30 to 35 miles an hour; that he did not notice any cars coming from the east on Route 58 as he went east prior to the collision; that there were no cars ahead of him and none behind him; that he looked in both directions prior to the collision; that he continued at the same rate of speed into the intersection; that he was almost up to the intersection when he first saw the Lomedico car; that he slammed on his brakes as soon as he saw her and then he blacked out; that he would say it was about a hundred feet from the center of the intersection when he first looked to the left or right; that he thought his car struck the left front of the Lomedico car; that he didn't see where the Lomedico car went: that he was knocked out for a while.

Norman D. Smith, a police officer employed by the City of Elgin for fifteen years, testified on behalf of plaintiffs that he was on duty, and that he and Officer Hendrickson investigated the accident, receiving the call at approximately 6:40 P.M. and arriving at the scene approximately two minutes later; that it was a warm, humid, clear day; that there was nothing to obstruct visibility and pavements were dry; that they found the injured people in a car north of Summit Street and up against a house on the east side of Hill Street; two ladies were injured in the collision; one was in the car and one was lying on the ground alongside the car; Mrs. Parrucci had a fractured right ankle and numerous cuts around the head and face; that the ambulance arrived shortly after they got there and "We were able to give them just immediate first aid."; and they then proceeded to get Mr. Kruse's Buick out of Summit Street; that it was located in the west bound lane, facing in a northwesterly direction; sitting crosswise in the two lanes; that he had no direct knowledge that it had not been moved prior to the accident; that they talked to Mr. Kruse, who stated he was driving the Buick and that he had seen the other car just moments before the impact; that it was right on him. Officer Smith further testified that he examined the intersection for skid marks and there were skid marks on the inside east bound lane on Summit Street and they were approximately 33 feet; that he could not determine whether they were fresh or old skid marks; that he was not able to identify debris in reference to either of these automobiles; that Summit Street is approximately 42 feet wide, and Hill Street approximately 36 feet. "When we talked to Kruse in the back of the squad car, we noticed that he had been drinking, but were unable to determine how much he had been drinking and were unable to determine the effect of his drinking on his condition, due to the fact that he

had received severe blows on the knees, in the collision. He wasn't unconscious. I don't recall seeing any blows on his head or any marks on his head or bleeding." Officer Smith further testified that "We were able to determine in the grass where the Lomedico vehicle had knocked off a guy wire to the telephone pole, and knocked down a fence which was east of the telephone pole, and were able to see the traces of the tire marks across the lawn to the point of the impact where it hit the house." He further testified that they inspected the intersection and found scattered glass in the intersection, also dirt and accumulation which might come from underneath a car; that he estimated it was about 130 feet from the northeast curb to the house against which the Lomedico car came to rest; that "We had a conversation with Mrs. Lomedico in the hospital. As we went to question her, the first thing Mrs. Lomedico said to us was: 'Was there a stop sign and was I supposed to stop?' When we informed her there was a stop sign there, we asked her if she did stop and she told us that she had stopped. She said she had allowed two or three cars to pass before she got to the intersection. That the cars referred to were west bound on Route 58."

Defendant, Anna Lomedico, called by plaintiffs under Section 60, testified on cross examination that on the day in question she was driving a Hudson automobile and that she had been past the intersection of Summit Street and Hill Street about 6 or 7 times, but that she had never come up Summit Street into the intersection; that she drove about 25 to 30 miles an hour as she came north on Hill Street; that she came to the stop sign at Summit and Hill and stopped; that the front bumper was about even with the stop sign; that she looked in both directions a couple of times before she started out; that she was almost across the street on Hill; "I seen the curb and all at once I heard

39

a bang and that is all I know. I did not hear a horn before the impact. I did not sound my horn, I did not hear any squealing tires and the next thing I was unconscious." On cross examination by the other defendant's attorney, Mrs. Lomedico testified that she never knew there was a hill down to the left "as you look down Summit Avenue. I had looked every time I had gone over there and had been across it 6 or 7 times but never knew there was a hill there. I am about 5 feet tall. . . . I never saw Mr. Kruse's car. . . . I was almost across when I looked again to the left. That was the third time I looked to the left. I looked to the right again and started out. I didn't see any car then either. The third time I looked to the left I was in the middle of the road. I didn't see any cars then either. I can't tell how far I was from the curb line. I could see the curb and I was getting close. I was across the center of the highway. I was almost across on Hill, I saw the curb on Hill, and all at once something hit me. I don't know anything after that. I had not reduced my speed or applied the brakes. . . . I was not trying to beat anyone across. . . . I think I had a pillow; that is because I wanted to see over the wheel."

Under the state of the record as disclosed by the testimony of the respective persons who were involved in the collision, and under the recent holding of the Supreme Court in another guest case, Amenda v. Suits, 8 Ill.2d 598, 134 N.E.2d 811, we cannot substitute our opinions on controverted questions of fact for that of the jury. It is understandable that a jury and trial court, who had the opportunity of seeing and observing the witnesses, could reasonably conclude that the defendant Anna Lomedico was guilty of wilful and wanton misconduct. At page 813 of the Northeastern Citation, the court said: "That reasonable persons might differ as to this conclusion or that a court of

40

review in weighing the evidence might differ is of no consequence." In Bliss v. Knapp, 331 Ill. App. 45, this court discussed the duty of a passenger and the problem of contributory negligence and said that these were matters for the jury to decide.

■■ As to the other defendant's contention that it was error for the trial court to overrule the motions for a directed verdict and for judgment notwithstanding the verdict, suffice it to say that a motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case. Seeds v. Chicago Transit Authority, 409 Ill. 566; Lindroth v. Walgreen Co., 407 Ill. 121, p. 130; Gorczynski v. Nugent, 402 Ill. 147, p. 156; Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571, p. 576. We are not concerned with the weight or credibility of the evidence, but only with the narrow question whether there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury. Lindroth v. Walgreen Co., supra, p. 130. From the evidence most favorable to the plaintiffs, the jury had the right to take into consideration the amount of intoxicating liquors which defendant admitted he had consumed on the afternoon of the collision and its effect on his ability to drive properly. The jury had evidence of the speed at which Kruse was traveling; it had evidence of the fact that he was very well acquainted with the scene, having traveled over it many times. His evidence was that it was a clear, dry day and that he did not see Mrs. Lomedico until he was within about twenty feet of her. We hesitate to interfere with the findings of the jury or with the judgment of the court.

41

██ ·Complaint is made by defendant Kruse as to three instructions given by the court on behalf of plaintiffs. Sixteen instructions were given by the court on behalf of plaintiffs; six on behalf of defendant Lomedico, and seventeen on behalf of defendant Kruse. When we consider all of the instructions which were given to the jury, we do not see how the three instructions complained of by defendant Kruse could have misled the jury, or how his rights were prejudicially affected in the giving of same. One of the instructions given on behalf of defendant Lomedico was as follows: "The instructions given to the jury are and constitute one connected body and series and should be so regarded and treated by the jury; that is to say, they should apply them to the facts as a whole and not detach or separate any one instruction from any or either of the others." Principles of law missing in one instruction may be supplied by others. Allied Mills, Inc. v. Miller, 9 Ill.App.2d 87.

██ Objection is made by defendant Kruse to the closing argument of plaintiffs' attorney as evidenced by the following:

"Closing argument by Mr. Kramer. The statement continues:

'. . . Counsel for defendant, Kruse said Mr. Kruse was not intoxicated. Here is what eight to ten bottles of Hamm's beer looks like.

(At this point Counsel for plaintiffs removed nine bottles of Hamm's beer from a brief case, tied together with a rope, and exhibited same to the jury.)

'Mr. Casey: I object to that and move that the Court instruct the jury to disregard it.

'Mr. Kramer: Those are nine bottles just like the other bottle which is in evidence. It is the same thing.

'Mr. Casey: I move that that be done.

'The Court: I am going to sustain the objection. This is improper. These are not in evidence and the jury are instructed to disregard them.

'Mr. Casey: I would like the record to show that Counsel has immediately produced out of his brief case certain things, being bottles of Hamm's beer—I don't know how many—

'Mr. Kramer; They are the same as plaintiffs' Exhibit No. 14.

'Mr. Casey:—suddenly, without notice and without having them marked in evidence. We certainly object to that. It is extremely prejudicial.

'The Court: The objection is sustained and I am asking Counsel for the plaintiffs to put them away, out of the sight of the Jury.

'Mr. Casey: I would like at this time to move to withdraw the case from the Jury and move for a mistrial.

'The Court: We will retire to Chambers for a few moments.' "

█ We (as the trial court did in its rulings) disapprove of plaintiffs' attorney's conduct. Should such be repeated, the trial court might be warranted in withdrawing a juror and declaring a mistrial. However the trial judge took proper action in the matter, and furthermore instructed the jury at the request of said defendant Kruse as follows:

"If counsel for either party, in the course of his argument, makes any statement of fact which is not based on the evidence you must disregard such statements."

Finding no reversible error in the record, the judgment of the city court will be affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur...