Ruth Frances Romines, Individually and as Administrator of the Estate of Doyt Romines, Deceased, Plaintiff-Appellee, v. Illinois Motor Freight, Inc., and Richard G. Goodrich, Defendants-Appellants.

Gen. No. 11,241.

Second District, First Division.

April 29, 1959.

Released for publication May 18, 1959.

\* See Callaghan's Illinois Digest, same topic and section number.

381

Barr & Barr, of Joliet (Ralph C. Murphy, Arthur T. Lennon, of counsel) for defendants-appellants.

George M. O'Brien, of Joliet, and Philip C. Zimmerly, of Champaign (John Alan Appleman, of counsel) for plaintiff-appellee.

JUSTICE McNEAL delivered the opinion of the court.

This is a suit to recover damages for the death of Doyt Romines and for the destruction of his motor vehicle as a result of a collision. Decedent was 29 years of age and earning approximately $6000 per year at the time of his death. He left a widow and three small children. The cause was heard by a jury, which returned a verdict for plaintiff in the amount of $25,900, and judgment was entered upon the verdict. Defendants' post-trial motions were denied and this appeal followed.

The collision occurred at about 11:30 p.m., on August 17, 1955, on U.S. highway 50 near Monee, in Will County, Illinois. The highway ran north and south and was two lanes wide. It was level and straight for a considerable distance north and south of the point of impact. The weather was clear and the pavement dry.

Decedent was driving a pickup truck in a southerly direction on the highway and the defendant, Richard G. Goodrich, was driving a tractor-trailer unit in a northerly direction in the course of his employment by the defendant, Illinois Motor Freight, Incorporated. As decedent drove his pickup truck in a southerly direction, and approximately 1½ miles from the scene of the accident, he passed another truck proceeding in the same direction. The driver of the other truck, who also was employed by the defendant corporation, testified that decedent had his headlights on and returned to his own side of the highway after passing said truck. He testified that decedent was driving between 70 and 80 miles per hour.

There was no eyewitness to the collision other than the defendant Goodrich, and in the absence of any competent eyewitness, plaintiff introduced evidence of decedent's careful driving habits. The bulk of the

evidence deals with the positions of the vehicles after the collision, the various marks on and about the highway, and a great number of photographs of the scene and of the vehicles.

The tractor-trailer unit operated by the defendant Goodrich came to rest two or three hundred feet north of the point of impact. It was off the highway on the east side in a jack-knifed position, the tractor facing in a westerly direction and the trailer pointing in a northeasterly direction. Decedent's pickup truck came to rest off of the highway on the west side. It was facing in a westerly direction.

Several witnesses who arrived upon the scene shortly after the collision testified that the unit operated by Goodrich did not have its headlights on. Most of the damage to the tractor-trailer unit was to the left side. The decedent's pickup truck was smashed down in front. The evidence shows that decedent was carried from the west side of the highway to the east side of the highway after the accident in order to await the ambulance and because his pickup truck was on fire. He lived only a short time after the collision.

The photographs show a dark stain on the highway partially in both lanes of traffic. There was evidence that the drive shaft of the tractor-trailer unit was down and the state patrolman and other witnesses testified that there were gouge marks in the northbound lane about 1 or 1½ feet east of the center line. One witness testified that there were tire marks on the east shoulder. Apparently the tractor-trailer unit went out of control and proceeded north several hundred feet after the impact.

Based upon the foregoing evidence, counsel for plaintiff contended that the tractor-trailer unit did not have its lights on and that it was on the wrong side of the highway. This latter contention was based

upon the premise that the gouge marks on the pavement close to the center line were made by the drive shaft on the tractor-trailer unit. The defense contended that the driver of the tractor-trailer unit turned off his lights after the accident, that the gouge marks were not made by the tractor-trailer unit but by the pickup truck, and that the various marks on the highway indicated that decedent was on the wrong side of the highway.

It is contended on this appeal that there is no evidence to support the verdict; that the verdict is against the manifest weight of the evidence; and that the trial court erred in its rulings on the evidence, in instructing the jurors, and in making prejudicial remarks.

■ As stated in Lindroth v. Walgreen Co., 407 Ill. 121, 130, a motion for a directed verdict or judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all of its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case. Applying this rule to the instant case, we cannot say that the jurors had no reasonable basis for concluding that the defendants were negligent, and consequently we do not find that the verdict has no support in the evidence.

■ ■ With reference to the contention that the verdict is against the manifest weight of the evidence, it is immaterial whether we agree or disagree with the jury's verdict. A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. Griggas v. Clauson, 6 Ill.App.2d 412; Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267. Our study of the record does not indicate that an opposite conclusion was

clearly evident, and consequently we do not believe that the verdict was contrary to the manifest weight of the evidence.

As to the claimed errors in the rulings on the evidence, counsel for defendant sought to introduce into evidence a self-serving statement by the defendant Goodrich as to how the accident happened. It appears that Goodrich made this statement after the collision and while he was helping carry the decedent across the highway. We believe that the trial court properly ruled that this statement was not a part of the res gestae and that it was therefore inadmissible. Johnson v. Swords Company, 286 Ill. App. 377, 379; Fortney v. Hotel Rancroft, Inc., 5 Ill.App.2d 327, 333; Petty v. Illinois Cent. R. Co., 8 Ill.App.2d 367, 386. Counsel also claim that the trial court erred in refusing to permit Goodrich to testify with reference to the various marks on the highway. They contend that the evidence was admissible because Goodrich went to the scene of the accident the day following the accident and that he was testifying to facts which occurred after the death of Romines. However, the trial judge ruled that the marks were made at the time of the collision and prior to the time of Romines' death. He ruled that Goodrich was not competent to testify to such facts and we believe that the trial court was correct in so ruling. Ruspantini v. Steffek, 414 Ill. 70, 73; Countryman v. Sullivan, 344 Ill. App. 371, 376.

With respect to the instructions, counsel for the defense object to the action of the trial judge in limiting each side to ten instructions. While we do not believe that an arbitrary limit should be placed on the number of instructions to be given in all cases, regardless of the number of parties and the complexity of the issues, yet it must be borne in mind that

386

the issues in this case were relatively simple and we do not believe that the defense was prejudiced in being limited to ten instructions. We pointed out the impropriety of giving an excessive number of instructions in Baker v. Thompson, 337 Ill. App. 327, and that decision has been followed in a number of cases. Chism v. Decatur Newspapers, Inc., 340 Ill. App. 42, 48; Randal v. Deka, 10 Ill.App.2d 10. Defendants' counsel further object to plaintiff's instructions 1, 3, 5, 6 and 8, but counsel have failed to set out these instructions in their brief as they should have done. Beebe v. Workman, 336 Ill. App. 1, 5. Further, we have examined the record with reference to the conference on instructions and while counsel made general objections to these instructions, they failed to make the specific objections which they now urge. Arboit v. Gateway Transportation Co., 15 Ill.App.2d 500, 146 N.E.2d 582, 588; City of Waukegan v. Stanczak, 6 Ill.2d 594, 608. Nevertheless we have read the instructions and believe that the jury was fairly instructed. Only eight instructions were given for plaintiff, and only one was peremptory. Furthermore, plaintiff's instructions are not subject to the specific objections urged against them. Counsel further object to the trial court's failure to give their "evenly balanced" instruction. This instruction has been both approved and criticized; but the jurors were amply advised by defendants' instruction 5 that plaintiff had to prove all of the elements of her case by the greater weight or preponderance of the evidence and consequently we believe that this instruction was properly refused. The same is true with regard to defendants' refused instruction 9, which directed a verdict for defendants if decedent "could" have avoided injury. The use of "could" has been criticized, and further the question of contributory negligence was fully covered in defendants' instructions 5, 7 and 12.

387

Finally, various complaints are made about the conduct of the trial judge. First, counsel say that one of the jurors should have been excused for cause because she stated that she sympathized with the widow. Upon further questioning by the court, she stated that she would not allow sympathy to interfere with her consideration of the case and that she felt that she could try the case fairly and honestly. The court thereupon stated to the jurors that sympathy should not interfere with the trial of the case and denied the challenge for cause. We see nothing improper in the court's conduct. Further, while counsel claim that they exhausted their challenges, the record does not so indicate; and even if it did, we doubt that the point is properly preserved because counsel should have attempted to exercise one more peremptory challenge than they were actually allotted in order to demonstrate that they were prejudiced. Spies v. People, 122 Ill. 1, 258; North Chicago Elec. R. Co. v. Moosman, 82 Ill. App. 172, 177; Muenter v. Moline Plow Co., 193 Ill. App. 261, 269. Counsel also complain that during settlement negotiations prior to trial and outside the presence of the jury the court stated that he hoped the defendants would lose the case. The only indication in the record that this statement was actually made is an affidavit filed by defense counsel, and we doubt that the point is properly preserved. But even assuming that the point is properly preserved and that such a statement was made, yet there is no contention that it was made in the presence of the jury and we cannot see how the defense was prejudiced in the eyes of the jurors. While any such statement would be clearly injudicious, yet an error requires a reversal only if the error has resulted in prejudice (Lindroth v. Walgreen Co., 407 Ill. 121, 136), and counsel for the defense, instead of contending that the court was prejudiced against

them during the course of the trial, actually advance the contention that the court was so unfair toward plaintiff's counsel as to cause the jurors to sympathize with plaintiff's counsel and return a verdict for plaintiff. Needless to say, there is nothing in the record to indicate that defense counsel made any protests during the trial concerning the court's treatment of plaintiff's counsel. In any event, we have read the entire record in this case and believe that the court was fair to both parties and that the court's rulings were substantially accurate, particularly in view of the great many objections which were made in this case.

We conclude that the parties had a fair trial, that the verdict is supported by the evidence, and that there were no prejudicially erroneous rulings with reference to either the evidence or the instructions. While certain remarks of the trial court may be the subject of criticism, yet it is conceded that such remarks were made outside the presence of the jurors and the record itself indicates that the court exercised complete fairness and impartiality toward all parties during the actual progress of the trial. We therefore affirm the judgment of the Circuit Court of Will County.

Judgment affirmed.

SPIVEY, P. J. and DOVE, J., concur.