Kenneth H. Michel, Appellee, v. Dan O'Connor, et al.
Rockford Motorcycle Club, Inc., a Corporation,
Appellant.

Gen. No. 11,317.

Second District, Second Division.

June 13, 1960.

Russell J. Goldman and Raold Jacobsen, of Rockford, for appellant.

Brown, Connolly, and Paddock, of Rockford, for appellee.

SOLFISBURG, P. J.
This is an appeal by the defendant, Rockford Motorcycle Club, Inc., from a judgment obtained against it

in the Circuit Court of Winnebago County, Illinois, by the plaintiff in a personal injury action. The plaintiff sued Dan O'Connor as the operator of a certain motorcycle participating in a race sponsored by the other defendants, Rockford Motorcycle Club, Inc., a corporation, and D. C. Butterfield, an individual. The case was tried before a jury, which returned verdicts in favor of the two individual defendants but returned a verdict in the amount of $12,000 against the defendant motorcycle club. The court entered judgment on the verdict, and from that judgment this appeal was taken, following the denial of a post trial motion seeking a new trial and judgment notwithstanding the verdict.

The defendant-appellant's theory is that its negligence, if any, in sponsoring and conducting the motorcycle race in question was such that as a matter of law it was not reasonably foreseeable that the plaintiff's damages could result from its alleged acts of negligence, that the injury complained of by the plaintiff was a pure accident which does not give rise to any liability on the part of defendant-appellant. The plaintiff-appellee's theory of the case is that there was ample evidence from which the jury could find that the defendant-appellant was negligent and the issue of foreseeability was properly a jury question; that plaintiff was not a spectator at the races conducted by defendant-appellant but was lawfully on the ice playing with and taking pictures of his small daughter; that as a matter of law assumption of risk is not involved because there was no contractual relationship between plaintiff and this defendant and no evidence that plaintiff had any knowledge of the manner of conducting the race.

On the day in question, December 30, 1956, the defendant, Rockford Motorcycle Club, Inc., a corporation, sponsored a motorcycle race on the ice on the

256

southerly part of Levings Lake. The defendant, Dan O'Connor, was one of the contestants in the races of which there was to be a series of eight events. The motorcycles travelled 25 to 35 miles per hour, slowing to 15 to 20 miles per hour on the corners. The accident with which this action is concerned occurred in the last lap of the eighth race. Levings Lake, which is owned and maintained by Rockford Park District, extends in a northerly-southerly direction. On the west side of the lake there is a warming house for the use of skaters. The motorcycle race track was laid out in an oval with straightaways about 200 feet long and extending generally parallel with the easterly and westerly shores of the lake. The track was delineated by auto tires laid approximately 50 feet apart. The plaintiff and his small daughter and a neighbor and his little girl came to the lake with a sled and cameras. The plaintiff, Kenneth Michel, sustained a memory loss covering most of the day, but plaintiff's neighbor when they left home knew nothing about motorcycle races at the lake that day. Plaintiff and his party proceeded along the east side of the lake, passed the races, and entered onto the ice where the two fathers took pictures of the children. They remained close to the east shore approximately across from the warming house.

Meanwhile, the motorcycle races were taking place at the southern end of the lake. The motorcycles were equipped with a third wheel and frame that would ordinarily support a sidecar but actually the racing vehicles had no sidecars. The third or sidecar wheel was to provide the cycles with added stability. Dan O'Connor's motorcycle struck one or more of six or eight clods of dirt or stone frozen in the ice on the track and about six inches above the surface and six inches in diameter. The motorcycle overturned, threw its rider off, righted itself and travelled northerly at

increasing speed from the point of impact a distance variously fixed by the witnesses at anywhere from 300 to 510 feet. The runaway cycle continued to where the plaintiff and others were on the ice. Plaintiff was looking north taking photographs at the time the motorcycle struck him, as well as another person. There were then about two hundred people on the ice engaged in skating and sledding. A deputy sheriff and flagmen directing the race attempted to keep people away from the track but there was no barricade or fence between the races and the people on the ice who were skating and sledding. Employees of the defendant motorcycle club endeavored to keep the track clear of people for 300 to 350 feet from the outer edge of the track. As a result of being struck by the cycle, plaintiff sustained substantial permanent injury.

The motorcycles used in the races in question were of the so-called street type without any snap throttle which would automatically shut off when the throttle is not depressed. There was evidence in the record that motorcycles which have such an automatic snap-back throttle, similar in operation to that found in automobiles, are manufactured and sold.

Defendant-appellant maintains that under the facts which are not in dispute it was as a matter of law unforeseeable that a person so situated as the plaintiff could be struck and injured by the runaway motorcycle. Defendant-appellant cites and relies substantially upon an English decision, Hall v. Brooklands Auto Racing Club, (1933) 1 KB 205–CA, referred to in annotation in 37 A.L.R.2d 397. This case involved an established auto racing track which was bounded by a six inch cement curb, as well as a four foot, five inch grassy strip and in addition an iron railing four and one-half feet high. Following a collision, a car was thrown high into the air, on top of the fence and beyond, injuring spectators. The court on review held

that a verdict for the plaintiff could not be sustained since the owners' duty was only to make the track as free from danger to spectators as reasonable care and skill could make it. The factual differences between the British case and this are plain. In the Hall case, unlike the present, the track was not a makeshift course but a regular racing track constructed for that purpose with a six inch curb and a four foot-six inch railing. The plaintiff in the instant case was not a spectator at the race but a lawful user of the public park enjoying the ice with his daughter and his neighbors. In addition, the Hall decision did not involve a runaway vehicle equipped with a throttle or accelerator which did not shut off when not depressed but instead kept running.

The evidence in the case at bar was that there were approximately 200 people on the ice exclusive of the people concerned directly with the motorcycle race. There were 100 or 125 skaters along the east shore of the lake, and the park district encouraged skating in season by removing snow. There was no barrier, fence, or barricade surrounding the track but only a track outlined by auto tires laid out on the ice. The race presented obvious hazards to the riders who protected themselves by means of safety helmets and protective clothing, as well as stabilizing outrigger third wheels on their cycles. There was some supervision of persons in the area of the race but these did not number over four persons, including a deputy sheriff and flagmen. One witness testified that the motorcyclist O'Connor was not the only participant in the race to go down with or off his cycle. The course was icy and slippery, and the motorcycles generally slid sideways for 10 or 15 feet on the turns, according to the evidence.

■■ We are satisfied by the evidence in this case that the verdict of the jury is warranted by the evi-

dence and was not occasioned by passion or prejudice. Tested by those well known standards which apply to post trial motions, the verdict here is, in our view, amply supported by the evidence and free from error, Kahn v. James Burton Co., 5 Ill.2d 614, 623, 126 N.E. 2d 836, Lindroth v. Walgreen Co., 407 Ill. 121, 130, 94 N.E.2d 847, Parrucci v. Kruse, 12 Ill.App.2d 30, 138 N.E.2d 91. It is well established in this State that liability may attach by reason of a defendant's negligent conduct even though the exact method by which the injury occurred as a direct result thereof could not have been expected. It is enough if some resulting injury could have been reasonably foreseen, Blue v. St. Clair Country Club, 7 Ill.2d 362, 364, 131 N.E.2d 31, Morrison v. Flowers, 308 Ill. 189, 197, 139 N.E. 10. There was evidence from which the jury could find the defendant motorcycle club negligent, and upon this record the issue of foreseeability was a question for the jury, which resolved it against the defendant-appellant. Defendant-appellant has suggested that the doctrine of assumption of risk is applicable. It is clear that that doctrine cannot be invoked if only for the reason that plaintiff was not a spectator of the races in question and did not voluntarily assume any risk in connection therewith; plaintiff was making lawful use of a skating area in another part of this public park provided for his enjoyment (cf. Murphy v. White City Amusement Co., 242 Ill. App. 56). Error is alleged also in the court's failure to give one of defendant-appellant's instructions, but since none of the instructions given or refused is set forth in the abstract we are not able to pass upon the point.

No error having been found, the judgment of the Circuit Court of Winnebago County is hereby affirmed.

Affirmed.

WRIGHT and CROW, JJ., concur.