Ebaloy, Incorporated, an Illinois Corporation, Plaintiff-Appellant, v. Square Deal Plumbing & Heating Supply House, Inc., Defendant-Appellee.

Gen. No. 47,947.

First District, Third Division.

September 14, 1960.

Rehearing denied September 28, 1960.

Opinion Modified September 30, 1960.

Memorandum on Petition for Rehearing, September 30, 1960.

Leonard W. Golan, of Chicago, for appellant.

Freeman and Freeman, of Chicago (Earl Freeman, of counsel) for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order of the trial court setting aside a verdict for plaintiff in a contract action, and entering judgment for defendant notwithstanding the verdict.

Plaintiff sued as an assignee of Royal Metalcraft Corporation (hereinafter referred to as Royal), not a party to this proceeding. The subject matter of the alleged assignment was an order for the purchase of 50,000 aluminum toilet seats given by Square Deal Plumbing & Heating Supply House, Inc., (hereinafter sometimes referred to as defendant) to Royal. Plaintiff claimed damages for breach of that contract by reason of defendant's refusal to accept the toilet seats. Defendant admits the refusal, but relies on two defenses: (1) that the document purporting to be an assignment was not an assignment; and (2) that plaintiff failed to tender delivery of the merchandise within the time provided by the contract.

On the first point, both parties presented parol evidence to support their respective views as to proper construction of the purported assignment, although defendant now contends it is clear on the face of the document that it is not an assignment and therefore parol evidence was not proper. On the second point, plaintiff replied that the provision with respect to the date of delivery was waived, and introduced evidence to support its position.

On these issues the case was submitted to the jury which returned a verdict in favor of plaintiff. Defendant moved for judgment notwithstanding the verdict. It also made a motion for a new trial. The trial court overruled the motion for a new trial and for a directed

verdict, but sustained the motion for judgment notwithstanding the verdict. The court did so not upon any grounds theretofore urged by defendant, but upon the ground that the assignment was only a partial assignment and that therefore in accordance with certain authorities cited by the trial court which we will hereinafter consider, Royal was a necessary party to any action on the contract brought by the assignee against defendant.

In this court defendant takes the position that while the trial court based its action on the ground that the assignment was a partial assignment only, the judgment should nevertheless be affirmed if it was proper for any reason, and it bases its principal argument on the ground that the purported assignment was no assignment at all.

██ In stating the facts of this case, it is to be borne in mind that if there is any evidence in the record favorable to plaintiff which with all reasonable inferences that might be drawn therefrom supports plaintiff's case, the court erred in rendering judgment notwithstanding the verdict. Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847; People ex rel. Simpkins v. Village of Kincaid, 26 Ill.App.2d 68, 167 N.E.2d 698; James v. Checker Taxi Co., Inc., 22 Ill.App.2d 22, 159 N.E.2d 12; Romines v. Illinois Motor Freight, Inc., 21 Ill.App.2d 380, 158 N.E.2d 97; Parrucci v. Kruse, 12 Ill.App.2d 30, 138 N.E.2d 91. Therefore in stating the facts, we will accept that evidence which plaintiff relies on to support its case.

Plaintiff operated an aluminum foundry. Defendant was engaged in the manufacture and distribution of plastic coated aluminum toilet seats. Royal's business was that of manufacturing and selling aluminum toilet seats. On August 27, 1947, defendant and Royal entered into a contract termed a "purchase requisition," under which defendant agreed to buy and Royal agreed to sell 50,000 seats at $5.55 per unit.

Some time prior to the execution of the contract between defendant and Royal, Royal's president, desiring to get the company out of manufacturing and devote it to selling, attempted the sale of Royal's processes, patents, equipment and inventory to plaintiff. A representation was made by Royal's president to the chairman of plaintiff's board of directors that Royal would be in a position to obtain a firm order for 50,000 seats from defendant, and that Royal would assign that order to plaintiff as part of its assets. On August 27, the date of the purchase order, Royal's president and plaintiff's chairman visited defendant Square Deal's president in the latter's office. There the proposed sale from Royal to plaintiff was discussed, and the president of Square Deal expressed his interest in establishing a relationship with plaintiff which would give it the seats required by the order within the shortest time, because he feared that Royal's manufacturing facilities were inadequate to meet the demand. Then, Square Deal's president signed the purchase order, handed it to the chairman of plaintiff, and together, Royal's president and plaintiff's chairman went to the office of plaintiff's lawyer. There, other instruments were prepared under great stress and urgency, as testified to by the lawyer who drafted the documents. One of those instruments was Exhibit 8, the document purporting to be the assignment around which the principal controversy in this case revolves, which we will quote in full when we consider the effect of that instrument.

They also executed a contract, referred to as Exhibit 10, between Royal and plaintiff providing for the sale by Royal to plaintiff of the toilet seat manufacturing business. It was a lengthy document and among its recitals, which we will consider later, was one stating that "Royal has concurrently herewith assigned to Ebaloy its interest in a firm order for 50,000 toilet seats covered by this agreement. . . ." This

statement with respect to assignment was repeated several times in the instrument. Exhibit 8, the assignment instrument, was physically stapled to the purchase order and has never been out of plaintiff's possession.

Plaintiff met with difficulties in the procurement of materials and manufacture of the seats and was unable to make the initial delivery of 2500 seats as required by the purchase order. However, delivery of some seats subsequently began and continued until some 2600 seats had been delivered by December 1947, the time within which under the terms of the purchase order over 7500 seats were to have been delivered. These delays, according to plaintiff's evidence which for this purpose we must accept, were acceded to by defendant's president on a visit to plaintiff's plant in October 1947, where he expressed satisfaction with the product. On that visit technical difficulties which caused the delay were explained to him, and he agreed to take the seats as soon as they were made available to him. On that date he also signed a sample seat bearing the legend that it was to be the standard which plaintiff would use in the manufacture of the 50,000 seats. Plaintiff delivered 2600 seats in the succeeding period of four or five weeks. Then early in December 1947, defendant refused to accept a delivery of 636 seats and never gave a reason therefor until after suit was brought, although asked to do so by plaintiff. There was evidence that at about this time wooden toilet seats were coming back on the market in quantity, making it difficult to sell metal seats. Plaintiff eventually disposed of the refused seats, of the seats in production at the time of defendant's rejection, and of the remaining inventory. It then brought this action in 1952 for damages resulting from defendant's alleged breach of contract.

We will first consider the propriety of the admission of oral evidence to explain the meaning of the

assignment in question. Defendant contends that it is not ambiguous, and that its meaning is apparent from the face of the document. The document, Plaintiff's Exhibit No. 8, reads as follows:

"For and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, Royal Metalcraft Corporation, an Illinois corporation, does hereby seal, assign, convey and deliver unto Ebaloy, Incorporated, an Illinois corporation, all of its rights, title and interest in and to the manufacture of 50,000 toilet seats from Square Deal Plumbing & Heating Supply House, Inc., Chicago, Illinois, at a price of $4.50 per unit, subject, however, to the right of the undersigned to collect the full amount of the purchase price set forth in said purchase order and the agreement by the undersigned to remit to Ebaloy, Incorporated the sum of $4.50 for each unit covered by such purchase order.

"Dated at Chicago, Illinois, this 4th day of September, 1947.

Royal Metalcraft Corporation
by /s/ Louis Marks.

Attest:
/s/ Betty Marks.
 (Seal)."

No question arises as to the assignability of the purchase requisition. Inasmuch as it is clear from the evidence that defendant Square Deal consented thereto, the sole question is whether between Royal and plaintiff there was a complete assignment of the purchase order. It is contended by defendant that this was no more than a delegation of duty. Defendant states that Exhibit No. 8 not only did not assign the purchase order, but in plain and unambiguous language gave plaintiff an order to manufacture 50,000

43

toilet seats for Royal, which Royal was to sell to Square Deal, or that plaintiff's Exhibit 8 was nothing more than a subcontract between plaintiff and Royal. Defendant refers to Williston, who states that a sharp distinction must be made between attempted assignments of rights and duties; that rights are assigned, but duties are only delegated. 2 Williston, Contracts, Secs. 407, 418 (rev. ed. 1936).

 It will be seen from the language at the beginning of the document that Royal sells, assigns, conveys and delivers unto Ebaloy all its rights, title and interest in and to the manufacture of 50,000 seats. This language is typical of an intended assignment. Continuing with the language of the document, it will be seen that this was a transfer of Royal's "rights, title and interest in and to the manufacture of 50,000 toilet seats *from* Square Deal. . . ." (Emphasis supplied.) The seats were not "from" Square Deal, but were going to Square Deal. Obviously, something was left out. It is plaintiff's contention that what was left out were the words "order for the" after the words "in and to," so that it would read as an assignment of the right, title and interest in and to the "order for the" manufacture of 50,000 toilet seats from Square Deal.

Under defendant's interpretation, plaintiff would have had the duty to manufacture, but Royal and Square Deal would not have the duty to pay for the units. [Exhibit 8 reads that Royal assigns its "interest in and to the manufacture of 50,000 toilet seats from Square Deal . . . at a price of $4.50 per unit, subject, however, to the right of the undersigned to collect the full amount of the purchase price set forth in said purchase order. . . ."] If the language was intended as a mere delegation of duty or as a subcontract, it was inappropriate and there was no point to making reference to the "full amount of the purchase

44

price" unless an assignment was intended. That parol evidence was properly admitted is supported by the authorities. Unique Watch Crystal Co., Inc. v. Kotler, 344 Ill. App. 54, 60–62, 99 N.E.2d 728, 732–33.

The parol evidence throws light on this instrument. It reveals that Royal was anxious to dispose of its manufacturing business and to devote its activities exclusively to sales; that it was anxious to sell its business to plaintiff; that one of the moving inducements for plaintiff to purchase was the contemplated order from Square Deal for 50,000 seats; and that the contract, Exhibit 10, finally made between Royal and plaintiff for the sale of Royal's manufacturing business, explicitly stated in paragraph 1(B) that "Royal has concurrently herewith assigned to Ebaloy its interest in a firm order for 50,000 toilet seats covered by this agreement. . . ." In paragraph 3 this statement appears: "Royal has represented to Ebaloy that it has a firm order for 50,000 of such toilet seats and that it will assign the same to Ebaloy on the terms and conditions herein referred to." In paragraph 14 it is stated: "Royal agrees that it will concurrently herewith and from time to time as requested by Ebaloy, execute such additional documents as Ebaloy may require for the purpose of establishing its full and complete, legal and equitable title in and to all of the property and assets conveyed or intended to be conveyed by Royal to Ebaloy hereby, but this agreement shall be and the same does hereby sell, assign, transfer and deliver all of said equipment, supplies and other assets to Ebaloy." It will also be noted, as we have previously said, that the order was handed by Square Deal's president to plaintiff's board chairman and was attached to Exhibit 8.

While, as we have said, the motion for judgment notwithstanding the verdict should have been denied if there was any evidence in the record which with all

45

reasonable inferences supported plaintiff's case, we will nevertheless consider defendant's argument on the facts favorable to it. Defendant emphasizes the fact that in the agreement between Royal and plaintiff for the sale of Royal's manufacturing business, Royal was authorized to bill defendant and to collect from defendant. This, it says, shows clearly that an assignment was not intended. The contract between plaintiff and Royal covered not only the existing order from Square Deal for 50,000 seats, but additional and future orders as well for 100,000 seats or more, and the terms of the contract were intended to fix a method of doing business for such future additional orders. However, the only order which it was provided should be assigned was the one for 50,000 seats executed by defendant. It will be noted also that in Exhibit 10, the contract between plaintiff and Royal, it is stated that it is the order which was assigned, not merely the duty to manufacture.

■ Defendant points to the actual practice between the parties, under which shipping memoranda issued by plaintiff to defendant show a sale to Royal, with delivery to defendant; billing for seats went from plaintiff to Royal and by Royal to defendant; and payments were made by defendant solely to Royal. This lends some color to defendant's position. It is explained on the basis of Royal as an agent having an interest in the proceeds to the extent that it was to be paid the difference between the purchase price, $5.55, and the amount, $4.50, paid to plaintiff. That difference is presumably for Royal's services in getting the order and doing the other things common for a selling agent to do. On the other hand, in addition to the two documents, Exhibit 8 and Exhibit 10, which are in themselves adequate to support the jury's verdict, there was introduced the following evidence: that defendant's president knew of the negotiations for the sale of Royal's assets to plaintiff and of the intended

assignment before the purchase requisition was executed, and that he consented to the assignment and physically handed the executed order directly to plaintiff's board chairman; that defendant's purchase requisition was stapled to the document purporting to be an assignment and remained thus in plaintiff's possession until the time of suit; and that the draftsman of the documents understood that the parties intended an assignment at the time he drew up the necessary papers. It is clear from the foregoing that there was sufficient evidence to support the verdict.

■ Defendant also contends that Ebaloy was admittedly in default at the time Square Deal refused shipment; that there is no competent evidence in the record that such default was waived; and that, therefore, since a party in default may not maintain an action for breach of contract, the court properly entered its judgment notwithstanding the verdict in defendant's favor. There was conflicting evidence presented as to defendant's waiver of plaintiff's default. A witness for plaintiff testified that defendant's president had visited plaintiff's factory; that he knew of the technical difficulties then being encountered by plaintiff in the production of seats; that at the time of the visit, plaintiff was already in default with regard to delivery schedules; and that defendant's president acquiesced in the delay. Defendant's witness denied any waiver of the delivery schedule and testified that he informed Royal's president that he must have the specified number of seats or would consider the order cancelled. This conflict in evidence created a question of fact for the jury which the jury decided adversely to defendant, and we must find that there was adequate support for the jury's verdict against a motion for judgment notwithstanding the verdict.

■■ The reason stated by the trial court for entering judgment notwithstanding the verdict was that a partial assignment of defendant's purchase order

47

was made to plaintiff by Royal; that Royal as assignor was a necessary party to the proceeding and not having been joined, the case would have to be decided in defendant's favor, citing as authority Chicago & N. W. Ry. v. Nichols, 57 Ill. 464; Eaves for Use of Ahlenius v. Chicago B. & Q. R. Co., 200 Ill. App. 380; and Mueller v. Northwestern University, 195 Ill. 236, 63 N. E. 110. The rule of these cases is that assignees of partial assignments may not institute actions against debtors without joining their assignors. The reason for this rule is to prevent a multiplicity of claims, suits and recoveries. But that reason has no application here as the statute of limitations would have barred any suit except that of plaintiff. No other action was filed prior to December 1957, when the period of limitations had expired, the cause of action having accrued in December 1947. The case was tried in 1958. Furthermore, Royal as a potential claimant was dissolved by order of court on December 1, 1951. The reason for the application of the rule no longer exists.

Under Section 26 of the Civil Practice Act, it is provided that no action shall be dismissed for nonjoinder of necessary parties without first affording a reasonable opportunity to add them as parties. Ill. Rev. Stat., ch. 110, sec. 26 (1959). At no time prior to judgment did defendant complain that a necessary party was lacking. In fact, it was upon the court's own motion after judgment that the point was first raised. Defendant could have brought Royal in as a necessary party defendant if it thought it would be prejudiced by Royal's absence from the suit. Ill. Rev. Stat., ch. 110, sec. 24 (1959).

■■ Where an objection of nonjoinder of a necessary party is first raised after judgment, it will be denied unless such denial will have the effect of depriving the party omitted of material rights without

48

a hearing, Boddiker v. McPartlin, 379 Ill. 567, 41 N.E.2d 756; McCullough v. Schuberth, 334 Ill. App. 333, 79 N.E.2d 754, or unless the interest of the omitted party in the subject matter of the suit is so interconnected with the interests of the other parties that his presence is an absolute necessity. Oglesby v. Springfield Marine Bank, 385 Ill. 414, 52 N.E.2d 1000; Gulick v. Hamilton, 287 Ill. 367, 122 N. E. 537. Royal's presence as a party was not at all necessary to a determination of this suit. The rights of defendant were in no way prejudiced by Royal's absence. Defendant did not claim that it had made any payment to Royal or that it had in any way made any deal with Royal involving the claim which plaintiff here makes. The trial court, we can understand, was conscientious in his discovery and making of the point, but it is not the kind of point that should have been made at that late stage of the proceedings.

No alternative cross-error is assigned by defendant on the denial by the trial court of the motion for new trial. The trial court should also have denied the motion for judgment notwithstanding the verdict.

The judgment of the trial court is reversed and judgment is entered here in favor of plaintiff for $30,000 with interest from the date of the verdict.

Judgment for defendant reversed.

Judgment in favor of plaintiff for $30,000 with interest from the date of the verdict.

McCORMICK and DEMPSEY, JJ., concur.

[MEMORANDUM ON PETITION FOR REHEARING].

██ ██ In a petition for rehearing, defendant makes the point that the court in accepting the explanation of the contract as urged by plaintiff and,

as we thought, supported by the evidence, was in effect reforming the contract, and that this could only have been done on a proper complaint in equity. In a broad sense, whenever a court finds that a document is ambiguous and then determines its true meaning from parol evidence, it is reforming the contract. That is not the kind of reformation which is contemplated when a complaint in equity to reform is deemed essential. What is there intended is that a term of the contract definitely expressed was the product of mutual mistake or other basis for reformation. Here, as the court found, the contract was ambiguous, and oral evidence was introduced to explain it. With explanation it became clear. Words are only the method of communication. The fact that words are used to make clear the meaning does not mean that a reformation of the contract is necessary to include such words. The contract as it stands with the parol evidence explaining it is sufficient to support plaintiff's version of the agreement.

McCORMICK and DEMPSEY, JJ., concur.